his remedy against the sheriff, and not against the defendants. If the delivery to the defendants was made pursuant to sections 1418 and 1419 of the Code of Civil Procedure, the interesting question which the plaintiff's counsel seeks to raise would be fairly presented. While we are to construe the pleading liberally and the facts stated in the complaint are admitted by the demurrer, we cannot assume the existence of facts which are not pleaded. It would not be proper at this time, in view of the present condition of the complaint, to discuss the question which the counsel for the plaintiff seeks to raise.

The judgment should be reversed, and plaintiff's counsel may be able fairly to present the question he seeks to raise by an amendment to his complaint.

---

### PEOPLE v. SYRACUSE RAPID TRANSIT RY. CO.

(Supreme Court, Appellate Division, Fourth Department.    January 6, 1909.)

INDEMNITY (§ 9*)—CONTRACT—CONSTRUCTION.

The state required by Laws 1894, pp. 621, 630–633, 643, c. 338, §§ 23, 50–53, 111, to keep bridges over canals in safe condition for the traveling public, granted to a street railway the right to maintain tracks over a bridge on condition that it should construct and maintain the railway at its own expense, and should pay all damages that might occur to the state or to individuals in consequence of the construction and maintenance of the railway. The bridge, in consequence of having been weakened from continuous use, collapsed while a street car was on it, and a passenger was injured. The state had negligently failed to maintain the bridge in a safe condition. *Held*, that the state paying the damages sustained by the passenger as required by section 37, amended by Laws 1899, p. 621, c. 280, could not recover the same from the street railway company; the consent not binding the company to maintain the bridge in a safe condition.

[Ed. Note.—For other cases, see Indemnity, Dec. Dig. § 9.*]

Appeal from Trial Term, Onondaga County.

Action by the People of the State of New York against the Syracuse Rapid Transit Railway Company. From a judgment for defendant on the verdict of a jury, and from an order denying a new trial on the minutes, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE and ROBSON, JJ.

W. S. Jackson and T. E. Hancock, for appellant.
Gannon, Spencer & Mischell, for respondent.

WILLIAMS, J. The judgment and order should be affirmed, with costs.

The action was brought to recover an amount paid by the state upon a claim made by one Carrie E. I. Chaffee for damages for personal injuries resulting from the fall of the bridge over the canal on James street, in the city of Syracuse, N. Y. The claimant was a passenger in one of the railway's cars, and while crossing the bridge it went down, and the car with it, into the canal below. There is no doubt

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the primary duty to keep the bridge in a safe condition rests upon the state, so far as the public traveling over it is concerned. Laws 1894, pp. 621, 630–633, 643, c. 338, §§ 23, 50, 51, 52, 53, 111. This duty was neglected so that damages resulted to the claimant. Such was the decision of the Court of Claims. The state was therefore properly required to pay such damages and the costs of enforcing the same. Laws 1894, p. 629, c. 338, § 37, and Laws 1899, p. 621, c. 280, § 1.

The state, having paid the claim, now contends that the railway is liable to it for the amount paid by reason of the provisions under which the railway had been constructed and was maintained and operated over the bridge. The permission was given May 29, 1889, to the Fourth Ward Railway Company. Under this permission the tracks were laid across the bridge, and the operation of the railway over the same was begun in 1889. In 1890 this railway company sold all its property rights to the Syracuse Consolidated Street Railway Company. In 1895 one George Sherman purchased all the property and rights of the latter company under mortgage foreclosure sale, and in 1896 conveyed these to this defendant. The street cars of these various companies have been operated during all the years under the written permission so given to the Fourth Ward Railway Company, and were so operated at the time of the accident in question. The permission was given to construct and maintain the railway across the bridge at the expense of the railway upon certain conditions and restrictions, among which were these: That the work should all be done under the direction of the state officials; that the railway should also pay a certain proportion of the cost of maintaining and keeping in repair the roadways on the bridge; that the permission might at any time be revoked and annulled by the state, and then it was provided in these words:

"(3) Said Fourth Ward Railway Company, shall be held liable for, and shall pay all damages that may occur or arise either to the State or to individuals, in consequence of the construction and maintenance of the said Street Railway, over and across said Canal bridge and crossing."

"(5) An acceptance by said Fourth Ward Railway Company of this permit shall be deemed a covenant for the faithful performance of all the conditions, and requirements herein contained."

It will be observed that, by the terms of the provisions, no duty was imposed upon the railway company to keep the bridge in a safe condition and strong enough for the uses it was put to from year to year. It had only to maintain its tracks across the bridge at its own expense, and to pay a certain proportion of the costs of maintaining the roadways. Nothing more. The duty of keeping the bridge sufficiently safe and strong for the uses to which it was to be put from year to year was imposed upon the state, irrespective of this written permission, and was not affected by the permission, except that the bridge was subjected to this additional use with the express consent of the state. It is said that the bridge in 1889, when the permission was given, was sufficiently strong and safe for the uses to which it was then subjected, and that the burdens imposed upon it since by reason of the enlargement of the railway cars and the loads drawn over the bridge have been greatly increased, and it should be added

that the additional burdens thrown on the bridge since that time by other traffic along the street and over the bridge have been proportionately increased also as the city of Syracuse has grown in population and business prosperity. Other loads than street cars have passed over the bridge of great weight, one at least of 20 tons or thereabouts. All these considerations called upon the state to strengthen the bridge or build a new one sufficiently strong to bear the additional burdens imposed thereon by public travel which had a legal right to pass along the street and over the bridge. So far as this railway was concerned, the state by the express terms of the permission might at any time revoke and annul the permission, and require the railway to remove its tracks from the bridge at its own expense. The bridge was an old one, had stood for 40 years and upwards, and should have been replaced by the state years before with a new modern and stronger one adequate to the needs of the locality and its business and the public travel over it. The failure to have a bridge sufficiently safe and strong was the grossest negligence on the part of the state, and it was this negligence which caused the accident in question, and which compelled the state to pay this claim here sought to be recovered from the railway company. In the absence of this permission and of provisions 3 and 5 therein above quoted, there certainly would be no ground whatever upon which to recover in this action. Are the terms of these provisions sufficient to authorize a right to recover? Was the intention to provide that the railway should be liable for damages suffered solely by reason of the gross negligence of the state? Such negligence as caused the accident in question? It seems to me not. We do not think it can be fairly said that within these provisions these damages occurred or arose in consequence of the construction or maintainance of the railway over the bridge. Certainly, if it was a question of fact, the jury was justified in finding for the defendant upon the question.

The bridge fell because it had become so weakened from continued use and overloading that it finally collapsed. The jury might as well conclude the overloading of the bridge, and consequent weakening thereof, was from other traffic along the street and over the bridge as from the operation of the railway over the same. They have found that the bridge did not fall in consequence of the operation of the railway over it, and this verdict was authorized by the evidence, was not contrary to or against the weight of the evidence. It is suggested that, if the car with its load had not been upon the bridge, it would not have fallen. How do we know that? We must say it fell because it had at last become so weakened that it gave way. It might just as well have fallen under some other weight, from some other load passing over it, by other traffic. Suppose it became so weak that a single light team going over it added the last straw which broke it down; would it be said the damage resulted from the passing of the light team over it? These railway cars and other heavy loads had passed over it day after day, and it had stood, but the weakening was going on from excessive use, and finally it gave way. Why charge the damage to the railway because its car happened to be on the bridge when it finally fell? The real cause, the primary cause of the accident, was the gross negligence of the state. I do not interpret this written consent so as

to enable the state to recover over against the railway company for an accident resulting primarily solely from its, the state's, gross negligence.

Moreover, I entertain doubt as to the validity of such an agreement if the construction of the state is to be upheld. It would be against public policy to permit the state to make and enforce such an agreement.

I think the verdict of the jury was correct, and should not be disturbed.

Judgment and order affirmed, with costs. All concur.