EDNA L. WOLF, as Administratrix of the Goods, Chattels and Credits of FRANK LEWIS WOLF, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant.

### Claim No. 17408.

Court of Claims, January, 1924.

**Claims against state — claimant's intestate killed when automobile went over unprotected bank along state highway — evidence failed to disclose intestate knew danger or was guilty of contributory negligence — when state held liable for failure to maintain barrier at intersection of roads — Decedent Estate Law, § 132, applied in determining award.**

On the night of July 30, 1922, which was dark, rainy and misty, claimant's husband was driving his automobile down a steep hill from the top of which to a highway maintained by the state under the patrol system is a distance of about 560 feet. Instead of making the turn at the foot of the hill where it enters said state highway the car continued straight ahead and over a bank down to the bottom of a gorge on the railroad where about eleven o'clock that night he was found and his car was upside down. The deceased, who was at the time of the accident twenty-five years of age and in good health, earning from thirty-six to forty-five dollars a week, left him surviving a wife and two infant children, and from the time of his marriage had always supported his

family by his earnings. There was no eye witness to the accident, no evidence to show that deceased was familiar with the location or knew the danger, and the defendant offered no proof that the deceased was guilty of contributory negligence. *Held,* upon consideration of all the evidence, that the deceased was free from negligence contributing to the accident; that he came to his death through the fault of the defendant in not having a sufficient guard or barrier at the place where the roads intersect and in permitting the barrier that was there to be broken down and shortened.

Taking the decedent's earning powers and the probable duration of his life, the expenses incurred for burial, etc., an award is made of $15,000, following the rule as to pecuniary loss laid down in section 132 of the Decedent Estate Law.

CLAIM for death of intestate on state highway.

*Leggett & Thibaudeau (Augustus Thibaudeau,* of counsel), for claimant.

*Carl Sherman,* attorney-general *(Henry P. Nevins,* deputy attorney-general, of counsel), for State of New York.

*Per Curiam.* The claimant presents a claim against the state, alleging that her intestate was killed through the negligence of the state, in not properly guarding a state highway and not having barriers thereon, whereby her deceased was killed on the 30th of July, 1922. The state highway was under the patrol system at the time. It is alleged that the state failed to properly protect and guard the same, *first,* by not having a sufficient barrier, and, *second,* by allowing part of the barrier which was located on the road to become broken and out of use, whereby the deceased was killed, while riding in an automobile, and going over an embankment. The place of the accident was beyond the limits of the city of Niagara Falls and near where the Lewiston branch of the New York Central railroad crosses the state highway. Sugar street is a concrete improved road which runs nearly north and south and intersects the Lewiston road substantially at right angles. Lewiston road is a state highway running easterly and westerly, and at the time of the accident was maintained by the state under the patrol system. Sugar street has a steep hill, the descent going toward the north where it intersects the Lewiston road. From the top of this hill to the Lewiston road is a distance of about 560 feet. At the northerly side of the Lewiston road, opposite Sugar street, there was a barrier or guard rail located, about five feet northerly beyond the edge of the Lewiston road. This guard rail or barrier was originally fifty-six feet in length. Several months prior to the date of the accident to the deceased the westerly end of the guard rail had been broken and removed. There were two sections of eight feet each which had been broken down by previous accidents, and left the guard rail at the time

of the accident to the deceased forty feet in length. There was no other barrier or guard rail at that time on the Lewiston road where Sugar street intersects the same. The guard rail at that time extended from the east along and parallel to the Lewiston road, in a westerly direction, so that the end of the guard rail terminated at a point in the Lewiston road directly opposite the center line of Sugar street, leaving about one-half of the Lewiston road, where it is intersected by Sugar street, unguarded. At the foot of Sugar street there was a sharp curve or turn, entering the Lewiston road, on both sides of Sugar street, substantially at right angles to Sugar street. The distance from the northerly side of the Lewiston road to the edge of the bank over which deceased went with his car was about sixty feet. The ground from the edge of the Lewiston road to the bank slopes slightly towards the bank. From the edge of the bank there was a gorge, at the bottom of which there was a railroad; the roadbed of the railroad was about sixty feet below the edge of the bank and the bank at the point where the deceased fell was substantially perpendicular. There was located between the northerly side of the Lewiston road and the edge of the bank a woven wire fence, running parallel to the Lewiston road, placed there by the railroad, which was about twenty-one feet in a northerly direction from the edge of the Lewiston road. The court examined the premises with the consent of and in the presence of both parties represented by their attorneys, at the time of the trial, and found the fence at that time to be rusty and the posts weak and partly rotten at the bottom. This fact was also established by the evidence of the witnesses. There was no light of any kind at or near the place where the roads intersect. The length of the car that the deceased was driving was twelve feet. Immediately after the accident the wheels were found locked, but whether this was caused by the car being in gear or the brakes being on was not shown. We do not believe that if the brakes were applied after deceased's car had left the road, it would be of much use, as the place between the road and the bank was grassy and wet and the application of the brakes would not have been as effective as though the car were on the roadbed.

On the night of the accident, which was a dark, rainy and misty night, the deceased was driving down the Sugar street hill, and instead of making the turn at the foot of the hill where it entered the Lewiston road, the car continued in a straight line over the bank down to the bottom of the gorge on the railroad. The deceased was last seen by his father at his father's home, in Buffalo, on the evening of the day of his death, at about nine o'clock,

when he left for Niagara Falls. At about eleven-ten of the same evening the deceased and his car were found by a railroad employee at the bottom of the gorge or cut, immediately below the point where the tracks of the automobile showed the deceased's car had gone over the bank. There was no eye-witness to the accident. The deceased was killed in the fall, and his car was found on the railroad, turned upside down. The tracks of the automobile showed that the deceased came from the top of Sugar street hill, and continued going down hill, passing over the Lewiston road at a point about four feet westerly of the end of the barrier, and so on over beyond the line of the street, in a straight line, to the edge of the bank and over the bank until the car struck the ground below, on the railroad proper. In going over the lot northerly of the Lewiston road, the car struck the woven wire fence between the upright posts of the fence and pulled the fence over so that it flattened. The light on the rear end of the auto was still burning when the deceased was found by the railroad watchman. There was nothing in the evidence to show that deceased was familiar with the location or knew the danger. The evidence showed that the Sugar road and Lewiston road were much traveled and used extensively by the public.

By section 176 of the Highway Law, as amended by chapter 371 of the Laws of 1922, the state assumed liability for *defects* in its highways where the state highway was being maintained by the state under such system as the commissioner of highways had adopted pursuant to section 170 of the Highway Law. The statute assuming such liability reads as follows: " The state shall not be liable for damages suffered by any person from defects in state and county highways, except between the first day of May and the fifteenth day of November on such highways as are maintained by the state under such system as the commissioner of highways may adopt pursuant to section one hundred and seventy, but the liability for such damages shall otherwise remain as now provided by law, notwithstanding the construction or improvement and maintenance of such highways by the state under this chapter; but nothing herein contained shall be construed to impose on the state any liability for defects in bridges over which the state has no control."

For many years, by legislative enactment, towns were held liable for defects in their highways; and it must be assumed that when the state through its legislature assumed liability for defects in its highways, and used the word " defect " in its statute, this language was to receive the same interpretation and construction as had been given to the word " defect " by judicial interpretation

and construction of the act holding towns liable for defects in highways.

Under section 265 of the Civil Practice Act, and section 131 of the Decedent Estate Law (Laws of 1920, chap. 919), the burden of proof of contributory negligence is in all cases placed upon the defendant. In this case there was no evidence given by the defendant that the deceased was guilty of any contributory negligence. In the case of *Galvin* v. *Mayor*, 112 N. Y. 223, 228, the rule was laid down that " It is by no means indispensable to a recovery in such a case that an injured party should always produce eye-witnesses as to the manner in which an accident occurred; for in many cases this is impossible and is almost always difficult; but it does not follow that a recovery cannot be had in such cases; " and the fact as to the defendant's negligence and the plaintiff's freedom from contributory negligence may be inferred from the circumstances surrounding the accident. And this rule has been recognized in many cases of accidents where death occurred. We think in this case that the deceased was free from contributory negligence; that the deceased was killed through the fault and negligence of the state, in not having a sufficient guard or barrier at the place where the roads intersect and permitting the barrier that was there to be broken down and shortened.

In the case of *Johnson* v. *State of New York*, 186 App. Div. 389, 390; affd., 227 N. Y. 610, the facts in the case were similar to those in the case on trial; and there one Johnson was killed in an automobile accident just off the state road leading from the city of Elmira into the state of Pennsylvania. " The highway was improved about 1900, and was placed under the patrol system in June, 1909. Johnson and his companion, one Osborne, left Mansfield during the late afternoon of August 3, 1916, reaching Elmira in the early evening, and returning left Elmira about one o'clock in the morning, Johnson driving the car. It was a very dark, foggy night. When they reached Pine City, a hamlet about seven miles from Elmira, the fog had become so heavy that with their headlights burning they could see about ten feet ahead of the car. A short distance from Pine City there was a sharp curve in the highway to the left. A blacksmith shop stood on the right-hand side of the highway. The space in front of the shop had been filled in and beaten down to approximately the level of the highway. It was in the direct line of the roadway, and presented the appearance in the night time of being the continuation of it. At the end of the open space, and fifty-seven feet from the highway, was a retaining wall from four to seven feet high, and beyond that a

25

**386**   EXCHANGE M. I. INS. CO. *v.* ZURICH G. A., F. & L. INS. CO.

Supreme Court, January, 1924.   [Vol. 122

field. The open space was unguarded. * * * The car traveling at the rate of probably ten or fifteen miles an hour ran across this fifty-seven foot space and over the wall, killing Johnson."

The court in that case held that the facts justified a verdict against the state in favor of the claimant.

There are other cases where the facts are similar to those in this case, where banks and curves beyond a bank were left unguarded, and the authorities were held negligent and a verdict for the plaintiff sustained. *Ivory* v. *Town of Deerpark*, 116 N. Y. 476; *Van Gassbeck* v. *Town of Saugerties*, 82 Hun, 415; *Nicholson* v. *Town of Stillwater*, 208 N. Y. 203; *Lendrum* v. *Village of Cobleskill*, 192 App. Div. 828.

The deceased was a young man at the time of his death, aged twenty-five. It appeared from the evidence that he was in good health. He was by occupation a refrigerating erecting engineer and machinist. His earnings at the time of his death were from thirty-six dollars to forty-five dollars per week. He left him surviving his wife and two infant children, Robert Louis Wolf of the age of two years, and Virginia Edna Wolf of the age of eleven months. It appeared by the testimony that up to the time of his death and from the date of his marriage he had always supported by his earnings his family. Under section 132 of the Decedent Estate Law (Laws of 1920, chap. 919), the damages awarded shall be the amount which a court or jury deems to be a fair compensation for the pecuniary injuries resulting from the decedent's death to the person or persons for whose benefit the action is brought.

Taking the decedent's earning powers and the probable duration of his life, the expenses incurred for burial, etc., we have followed the rule as to pecuniary loss, and estimate the damages sustained by the claimant at $15,000.

Present: ACKERSON, P. J., CORWIN and MORSCHAUSER, JJ.

Judgment accordingly. ———————