Joseph Cotriss, as Administrator, etc., of John Cotriss, Deceased, Respondent, Appellant, v. The State of New York, Appellant, Respondent.

(Claim No. 18,298.)

Fourth Department, May 2, 1928.

State — claims against — decedent in approaching canal bridge in winter time in automobile ran across bridge footpath between end of steel truss and end of footpath guard, broke guard rail and fell into canal — entrance to bridge was on incline at top of which was right turn — footpath guard rail was sufficient for purposes intended — fact that fire truck had similar accident few years before does not establish negligence.

Plaintiff's intestate was killed when an automobile which he was driving collided with a footpath guard rail on a canal bridge, broke through the guard rail and dropped into the canal. The accident occurred in the winter time when the roadway was icy and the accumulation of ice and snow was so deep that the sidewalk was only three inches higher than the roadway. The highway on which the intestate was traveling ran generally north and south and as it approached the bridge there was a seven degree incline to the bridge level and just as the road entered the bridge it was necessary to make a sharp turn to the right. On each side of the bridge roadway there were steel trusses and on the outside of the footpath there was a guard rail erected in ten-foot panels.

The automobile of the intestate instead of making the right turn proceeded toward the left side of the bridge, across the sidewalk between the end of the truss and the end of the sidewalk guard rail, struck the guard rail, broke through and fell into the canal.

The sidewalk guard rail was strong enough to answer the purpose for which it was erected, which was to prevent pedestrians from falling from the bridge, and the State was not called upon to erect a guard rail sufficiently strong to prevent an automobile from breaking through.

The fact that some years prior to the accident in question a fire truck while attempting to pass over the bridge suffered an accident similar to that which the plaintiff's intestate suffered, except that the truck did not fall into the canal, and the further fact that the guard rail, which was then broken, was not fully repaired, but was merely pulled back into place and fastened there by pieces of wood wired to the rail, does not establish negligence on the part of the State.

CROSS-APPEALS from a judgment of the Court of Claims, entered in the office of the clerk of said court on the 7th day of November, 1927.

*David A. White* [*Milton J. Whedon* of counsel], for the claimant.

*Albert Ottinger, Attorney-General* [*James Gibson, Second Assistant Attorney-General,* of counsel], for the defendant.

TAYLOR, J.  On November 7, 1927, in an action for damages for wrongful killing of plaintiff's intestate, the Court of Claims rendered judgment for plaintiff for $1,750, with interest.   Defendant appeals, claiming that the award should have been no cause of action on all grounds except amount of damages; and plaintiff appeals, claiming inadequacy of award.

The testimony furnishes a basis for the following state of facts: Main street in the village of Medina runs generally north and south. It is paved with concrete.  From a certain point in the general level of the pavement on Main street the street inclines upward about seven degrees to a bridge crossing the Erie canal.   The distance from the general street level to the bridge is about one hundred and eighty feet, the rise in that distance being about twelve feet.  About twenty feet westerly of the west end of the bridge, as one proceeds northerly, the road turns sharply to the right at about a right angle and leads directly onto the bridge, which runs substantially east and west.   The roadway of the approach is eighteen to twenty feet wide, and surfaced with dirt and stone.   Whether or not defendant was under obligation to maintain or care for the approach is of no material importance.

This bridge was thirty-three feet six inches wide over all, with sidewalk for pedestrains on each side.   The roadway in the center was eighteen feet six inches wide.  Between each sidewalk and the vehicle roadway there were trusses, and the bottom of the

truss at the northwesterly end was a little over five feet east of the west end of the bridge. On the outside or northerly edge of the north sidewalk was an iron fence of lattice-work construction about four feet high, along the top of which was a two and one-half inch iron pipe. The fence was in panels some ten feet long. The distance diagonally from the northwesterly end post of the bridge — the sidewalk post — to the end of the northwesterly truss was seven feet eight inches.

Along the northwesterly side of the approach from Main street, on a concrete abutment, was a substantial fence consisting of iron posts supporting three two and one-half-inch horizontal iron pipes. This railing terminated about eight inches west of the northwesterly sidewalk post of the bridge. The northwesterly side of the abutment marked a sheer drop to the general level of Main street at the foot of the slope of the approach. The end of the concrete sidewalk at the northwesterly end of the bridge, under normal conditions, was about ten inches higher than the roadway abutting it. At the time of the mishap, because of packed snow and ice, the rise of this concrete end of the sidewalk was only about three inches above the snow and ice.

On December 6, 1921, a village fire truck, weighing five tons, going up this incline at some twenty-two miles an hour, in high gear, hit the westerly sidewalk post of the bridge, sheared off the bolts fastening the post to the concrete and pushed the post out about three and one-half feet over the water with the post and the first ten-foot panel of the fence left swinging. This end post was nearly five feet high, the bottom of it ten inches square with a cylindrical upright five inches in diameter fastened to the concrete abutment by four bolts passing through a flange ten by ten inches square and about one inch thick. The fire truck stopped before it went over into the canal. After this accident the post and railing were drawn partially back so that it was within a foot or so of its former position. Two pieces of wood were wired across the aperture. Some two weeks later employees of the State inspected the break; but they left the bridge as they had found it, a condition which continued till the time decedent was killed.

On December 24, 1925, at about eight-thirty P. M., plaintiff's intestate drove an Oakland runabout automobile weighing about 2,500 pounds up the approach to this bridge at fifteen to eighteen miles an hour and probably in high gear. The surface of the approach was icy and slippery. In making the right turn, instead of keeping to the right, decedent ran his car straight ahead over the west end of the northerly sidewalk of the bridge, between the end of the bridge truss and the westerly sidewalk post, and right

through and down into the canal, causing his death. An inspection immediately following the mishap disclosed that the westerly post and the first ten-foot span of lattice-work fence were sprung out over the canal about four feet at the northwest corner.

For the protection of the persons and property of users of the highways, the duty rests upon the State to erect and maintain suitable signs or barriers along or near State highways — and upon bridges over canals — of such a character and at such points as the various circumstances presented reasonably demand. (*Flansburg* v. *Town of Elbridge,* 205 N. Y. 423; Canal Law, § 47, as amd. by Laws of 1915, chap. 494; *People* v. *Syracuse Rapid Transit R. Co.,* 129 App. Div. 800.) For a violation of such duty the State is responsible as is an individual or corporation. (*Mendelson* v. *State,* 218 App. Div. 210; affd., 245 N. Y. 634.)

Whether such a sign or barrier shall be maintained at a given point and under given circumstances, whether it shall be suitable merely as a warning or must suffice to physically prevent vehicles from running off the highway into places of danger, is often a question difficult of determination; usually a question of fact is presented (36 A. L. R. 413); but not always. (*Roberts* v. *Town of Eaton,* 238 N. Y. 420.)

Numerous New York cases are found in the books bearing generally upon the subject under consideration. Illustrative are *Lendrum* v. *Village of Cobleskill* (192 App. Div. 828), where many cases are collated; *Flansburg* v. *Town of Elbridge* (*supra*); *Johnson* v. *State* (104 Misc. 395; affd., 186 App. Div. 389; 227 N. Y. 610), and the cases cited in the opinion in *Wolf* v. *State* (*infra*). The determination in each of these cases depended so much upon the particular state of facts involved that comment upon them here is not helpful. They have little direct bearing upon the instant set of facts. This general subject is fully discussed in notes in 27 American Law Reports, 927, and 36 American Law Reports, 411.

In *Roberts* v. *Town of Eaton* (238 N. Y. 420) an automobile weighing 3,000 pounds was being driven along a deeply rutted, frozen and slippery hillside road. While attempting to pass another car the automobile, after being held by the ruts, was suddenly run over the side of an adjoining bank. The contention was made that a barrier was needed at the place mentioned, not as a warning against obvious dangers, but because, on account of the declivity and general contour, it was the duty of the town to maintain a barrier sufficient to keep automobiles from running off the bank. The Court of Appeals dismissed the complaint, reversing the Appellate Division, which had affirmed a judgment for plaintiff. In its opinion the court said:

" Defendant was not obliged to construct a barrier sufficiently strong to hold a heavy car from going over such a declivity. (*Corcoran* v. *City of New York*, 188 N. Y. 131; *Best* v. *State of New York*, 203 App. Div. 339; affd., 236 N. Y. 662.) All that was required of it was that it should erect such a railing, if any, as would be a sufficient protection for travel generally.

" The town was not bound to exercise extraordinary care to guard against unusual accidents. ' The limit of duty on the part of a town with regard to the condition of its highways falls far short of making them absolutely safe, under all circumstances, even for those who use them properly.' (*Lane* v. *Town of Hancock*, 142 N. Y. 510, 521.) "

In *Best* v. *State of New York* (203 App. Div. 339; affd., 236 N. Y. 662) a judgment dismissing a claim was affirmed. In the course of its opinion the court made this statement: " It is not the duty of the State or of a highway officer to construct a barrier sufficiently strong to hold a heavy car or truck from going over an embankment. The existence of a guard rail, such as the State might be called upon to erect, would not have prevented this accident."

In *Dorrer* v. *Town of Callicoon* (183 App. Div. 186), after discussing the facts and citing several cases, the court said: " In any event there was no duty so to guard that an automobile, striking the barrier head on, with a weight of two tons and a speed of several miles per hour, would not have passed through and over the embankment."

The Court of Claims, in *Reuther* v. *State* (126 Misc. 773), found against claimant in a case where an automobile was run through a guard rail next to a bridge, after the driver had made a turn in the road some seventy feet away. *Johnson* v. *State* (*supra*) and *Wolf* v. *State* (*infra*) are distinguished in the opinion.

In *Wolf* v. *State* (122 Misc. 381) a substantial barrier had been erected extending fifty-six feet along the northerly side of the Lewiston road (a State highway) opposite a point where Sugar street, coming down a heavy grade, intersected the Lewiston road toward the north. Sixteen feet of the westerly end of the barrier had been broken away by straying vehicles at previous times, and never replaced. On a dark, rainy night, decedent ran his automobile down Sugar street and over the bank beyond the Lewiston road, westerly of the barrier, and was killed. A judgment for the plaintiff administratrix was affirmed by this court (210 App. Div. 827). Plainly that was a situation of danger where such a mishap was quite likely to occur, where a substantial barrier had been built and then not kept in repair. It seems unnecessary to point out

the difference between the state of circumstances there presented and those here involved. If the rule laid down in the opinion of the Court of Claims in that case as to an obligation in the State to erect barriers which will prevent automobiles from running off highways be intended to be of general application, we do not feel required to follow that rule in dealing with the state of facts before us.

There was a barrier as described all along up the westerly and northwesterly side of the approach, plainly visible, terminating within eight inches of the first sidewalk post of the bridge, and, so far as appears, ample for all purposes. If the State is to be held responsible for the death of this intestate, that responsibility must result from its having failed to so construct and maintain the north sidewalk fence of this bridge — constructed of lattice-work and maintained for the protection of pedestrians — that it would suffice to prevent heavy and fast-moving automobiles from being driven off the roadway, through this narrow space (seven feet and eight inches) and through the end span of the sidewalk fence down into the canal when a roadway eighteen feet six inches wide awaited the driver. "I am not unmindful of the force of the argument that a municipality should not be required to guard against reckless drivers of heavy auto trucks and high-powered automobiles." (*Lendrum* v. *Village of Cobleskill, supra.*)

Without doubt the situation confronting decedent on this evening was one presenting danger. Some skill and care were essential to a safe negotiation of this approach and bridge, particularly at night and when the roadway was slippery. There is no testimony as to whether or not there were lights installed above or along the approach. But it is fair to assume that the headlights of decedent's automobile were in operation, else he would have been chargeable with gross negligence. To require a barrier strong enough to have kept this misguided one and one-half ton vehicle from plunging through the sidewalk fence of this bridge and into the canal, would have compelled the erection of a heavy wall or barrier of stone or concrete or metal quite out of general proportion and entirely too massive for reasonably protective purposes or for the prevention of mishaps likely to occur in the use of the bridge. The fact that a truck some four years before had broken the same westerly ten-foot span of this sidewalk fence, but had not gone over into the canal, and that the span had never been repaired up to its former state of efficiency, does not establish actionable negligence in defendant. This lattice-work fence was evidently sufficient for its manifest purpose, viz., to prevent pedestrians from walking into the canal. If the duty resting upon the State in the premises required a barrier at this spot which would have kept this automobile from going into

the canal, no one can say that this lattice-fence in perfect repair would have done so. To hold that such a mishap as this was reasonably foreseeable by defendant's representatives and should have been provided against by appropriate construction, would be requiring the State " to erect a barrier sufficiently strong to prevent automobiles from going over an embankment along the street, regardless of weight, power and speed of machine." (See *City of Indianapolis* v. *Moss*, 74 Ind. App. 129.)

We find no actionable negligence in defendant. Therefore, we reverse the judgment appealed from on the law and facts and dismiss the claim, with costs to appellant.

All concur. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment reversed on the law and facts, with costs, and claim dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new conclusions of law made.