WILLIAM HUSTON and MABELLE D. HUSTON, as Administrators, etc., of DOROTHY AVIS HUSTON, Deceased, Respondents, *v.* COUNTY OF CHENANGO, Appellant.

Third Department, December 29, 1937.

*H. C. & V. D. Stratton* [*H. C. Stratton* of counsel], for the appellant.

*Flaesch & Latham* [*Livingston S. Latham* of counsel], for the respondents.

BLISS, J.  The plaintiffs' intestate, a girl fourteen years old, was drowned on the evening of October 25, 1933, when an automobile in which she was riding went off a county road along the southerly side of the Susquehanna river between the villages of Afton and Bainbridge, Chenango county.  At the point of the accident the highway had a twelve-foot wide macadam pavement.  Along the northerly or river side was a three-foot grass and weedy shoulder and then a bank which sloped twenty-two and one-half feet in thirty-seven and one-half feet to the water's edge.  The water was over five feet deep.  There were no guard rails or other barriers between the edge of the macadam and the water.  A driveway turned off of the south side of the macadam into a set of farm buildings.  There had been a sleet storm that afternoon and the grass and weeds were slippery.  This girl was a passenger and was on her way to attend a party.  At about seven-thirty P. M. two of the occupants of the car, an Overland sedan weighing 2,120 pounds, inquired at the dwelling house immediately west of this driveway for directions to the scene of the festivities.  The car was then headed easterly and had stopped in front of this dwelling. The headlights were on.  After the inquiry a shifting of its gears was heard as the car started up.  The party was to be held at a place some distance to the west so that it was necessary for the car to be turned around in order to proceed to its destination. An hour and a half later one of the occupants of the farm house saw a strange light in the water of the river.  Help was summoned and the car was found upright and completely submerged in the river.  All seven of its occupants had been drowned.  An examination of the roadway and bank showed that the car had been driven about ten feet into the driveway and backed out toward the east; that in backing the car had gone diagonally across the macadam,

the three-foot shoulder and down the steep bank into the water. The tracks also showed that on the shoulder and down the bank the rear wheels of the car were either sliding with the brakes on or turning in a forward direction. The car itself was in low gear when taken out of the water. At no other point along this road from Bainbridge to Afton, a distance of over five miles, was the top of the river bank so close to the edge of the macadam. The trial court submitted the case to the jury under the usual rule of reasonable care and charged that it was for the jury to say whether such an accident should have reasonably been foreseen and if reasonable care prompted some kind of a warning or barrier along the highway. From a verdict for plaintiffs, defendant appeals.

The appellant claims that the instant case comes squarely within the rules laid down by the Court of Appeals in *Roberts* v. *Town of Eaton* (238 N. Y. 420). That was a case where an automobile was being driven along a frozen, slippery, deeply rutted dirt town road. In attempting to turn out of the ruts upon meeting another car, the car was driven ahead with some force, the wheels struck the grass, snow and ice beside the road and it slid over the bank and upset.

Judge POUND, writing for an unanimous court, there said:

" Defendant was not obliged to construct a barrier sufficiently strong to hold a heavy car from going over such a declivity. (*Corcoran* v. *City of New York*, 188 N. Y. 131; *Best* v. *State of New York*, 203 App. Div. 339; affd., 236 N. Y. 662.) All that was required of it was that it should erect such a railing, if any, as would be a sufficient protection for travel generally.

" The town was not bound to exercise extraordinary care to guard against unusual accidents. ' The limit of duty on the part of a town with regard to the condition of its highways falls far short of making them absolutely safe, under all circumstances, even for those who use them properly.' (*Lane* v. *Town of Hancock*, 142 N. Y. 510, 521.) The risk here was not enhanced by the lack of any ordinary barrier. It arose out of a combination of unforeseen circumstances against which the exercise of ordinary care would have afforded no protection.

" The rule of duty in such cases is one of reasonableness. While the general use of motor vehicles has developed a new class of risks, it is not incumbent on the towns to anticipate and guard against every danger that may attach to the operation of automobiles over country highways. To impose on towns the burden either of constructing substantial barriers at every point of possible danger or of paying damages when unusual accidents occur which such barriers might have prevented, would be to advance the

present measure of liability beyond the rule of ordinary care into the field of insurance against accidental injury or death.

"Where it is unreasonable to charge the town with the duty of maintaining barriers sufficient to prevent all accidents the court will declare non-liability as a matter of law."

The court also stated that it was not contended that a barrier was needed as a warning against obvious dangers.

Little aid is to be had from an historical review of the precedents. The cases are ably collected and discussed by Judge TAYLOR of the Fourth Department in *Cotriss* v. *State* (223 App. Div. 520). Suffice it to say that there has been a disposition on the part of the courts to hold that no liability is imposed upon the municipality where the only dereliction in duty is the failure to erect a barrier of sufficient strength to prevent an automobile from breaking through it, even when traveling at a not unreasonable rate of speed. Nor need the municipality guard against accidents not reasonably foreseeable — not the particular accident but that type of accident. But even considered in the light of this trend of authority against liability, there is still a question of fact in the case at bar. Of all the five or six miles of highway winding along the southerly side of the Susquehanna river from Bainbridge down to Afton, this spot was one of the most dangerous. Here the steep bank came closest to the road's pavement. Here the deep water of the river, a precipitous bank, an extremely narrow shoulder and a meager pavement all combined to make this spot unusually perilous for the automobilist. Added to this was the driveway with its invitation of use for the common purpose of turning around.

While the general principles governing liability as stated in the *Roberts* case are just as true today as they were when enunciated, conditions of travel have changed greatly since the happening of the events which gave rise to that litigation. The automobile traveler of today is more adequately protected, both by warnings of danger and protection against his car's leaving the traveled portion of the highway. He may expect more in the way of protection and may rely to a greater extent upon the absence of the usual warning signs. All classes of highways have been made much safer. Those which have been improved or are now maintained as a part of the county systems are suited for safe automobile travel at speeds far in excess of those prevalent a few years ago. The smooth pavements induce speed. A railing which in 1921 would have been a sufficient protection for travel generally would not be such today. A highway which required no warning of or protection from danger to travelers then might demand otherwise today. That which was then an unusual accident might be

quite common today. A factual situation which would then have been held as matter of law to have created no liability on the part of the municipality would not serve as a norm today. Each case must be judged by itself and in the light of the conditions now prevailing.

We may not say with legal certainty that the absence of all warning of this dangerous spot did not lull the driver into a false sense of security. The failure to warn of the danger was negligence and a cause of this disaster. The failure to erect a barrier of sufficient strength to have held this car or any other traveling under ordinary circumstances was also a cause contributing to the occurrence and to liability. As cars go nowadays this Overland was comparatively light in weight. It had run backward but a few feet and could have gathered but little momentum. Its rear wheels were sliding from action of the brakes or were turning forward. There was nothing to prevent one coming out of the driveway from going straight over the bank. Barriers such as we daily see in common use along highways of this class would have held this small car. These are all proper inferences from the established facts. The county failed in its duty to warn and to protect. Applying the principles of the *Roberts* case to these facts in the light of present standards, we may properly say within the very language of that case that the defendant had failed in its duty to erect such a barrier as would be a sufficient protection for travel generally. Under these same modern highway safety precautions the jury below has correctly held the appellant liable for the death of this girl. The question as to what reasonable care requires is usually one of fact for a jury and under the particular combination of circumstances here, all pointing to the necessity of a barrier both for purposes of warning and protection, this court may not properly say that no negligence on the part of the municipality was shown. (*Griffith* v. *Town of Colesville*, 261 N. Y. 568; *Countryman* v. *State of New York*, 251 App. Div. 509.)

A county is now liable for negligence in the maintenance of its highways. (County Law, § 6.) But appellant contends that the respondents did not show that this was a county highway. The farmer living at the scene of the accident testified that this was a " county road." The county superintendent of highways said that during the construction of the macadam pavement he was the engineer in charge and that it was built under his supervision. The entire case was tried and submitted in the apparent belief by the court and counsel alike that this was a county highway. It was so alleged in the complaint and not disputed on the trial.

The county may not now be heard at this late date to disclaim liability upon the theory that this was not a county highway.

Appellant also complains because the respondents were permitted to show that certain guard rail posts appearing in a photograph of the scene of the accident taken some time later and offered in evidence by the appellant, were not there at the time of the accident. The photograph was received upon proof by appellant that it was a fair representation of the highway at the scene of the accident. Under these circumstances the respondents had a right to show that the guards appearing in the photograph were not present at the time of the accident.

The judgment and order should be affirmed, with costs.

HILL, P. J., and RHODES, J., concur; McNAMEE, J., dissents, with an opinion in which CRAPSER, J., concurs.

McNAMEE, J. (dissenting). Jacob Lord and his wife, with five children, were on their way to a party at the home of a Mr. Springsteen on October 25, 1933, about seven-thirty o'clock in the evening, in an Overland automobile. Rain had fallen in the afternoon, and this turned to sleet in the evening. Not knowing the exact location of Mr. Springsteen's house, after traveling several miles inquiry was made at the home of Mr. Warner, where it was learned that they had gone beyond their destination. Evidently for the purpose of turning around, the car was driven into an ascending driveway leading to a barn, was backed out of the driveway onto and across the road, and down a bank into the Susquehanna river. All of the occupants were drowned. One of these was plaintiff's intestate, fourteen years of age, on account of whose death this action is brought.

The road was a county highway extending along the Susquehanna river for many miles, and at the place of accident was twenty feet wide, with a macadam pavement of twelve feet, a shoulder on the upland side of about five feet, and on the river side of three feet. The driveway from the barn widened at the highway to about twenty-four feet. On the river side of the highway was a precipitous bank extending from the edge of the shoulder to the water which was five or six feet deep. This highway had been improved ten years before, was much traveled, and no guard rail or fence had been erected at this point.

The accident was unwitnessed. Apart from the presence of the car and its occupants in the river, only a few facts were established from which legitimate inferences may be drawn as to the actual happening. It was necessary for the driver to turn around and retrace a part of his course. The automobile and its occupants

weighed about 2,800 pounds. When taken from the river, the car was in low gear, and the brakes were in a " set " position. The car had a two-wheel brake mechanism which was so out of repair that the car was practically " without brakes." The road and the driveway were of ample dimensions for turning out of the driveway into the road in either direction, and had been used for that purpose by Mr. Warner for many years without mishap. Additional facts to support any theory of what happened must be inferred from testimony describing the automobile tracks.

The evidence shows that these tracks led up into the ascending driveway a considerable distance, and then back to the highway, across the highway and shoulders at an angle with the road, and down the bank. The grass and the weeds on the shoulder and bank gave indication that the wheels were probably turning forward during the descent, as the clear evidence is that the brakes would not " hold " the rear wheels. There is no evidence that the driver was familiar with the *locus in quo*, or that the private driveway was used by the public, or that such use was invited or authorized.

It is upon this showing that plaintiffs contend that the intestate came to her death because of the negligence of the county in failing to maintain a guard fence where the car went down the bank, and that the death of the intestate was due to that negligence. In my judgment, this position is not tenable. There is no proof to show that the driver did not commit some mistake or did not suffer some personal mishap while operating the car, or to show there was not some failure in the mechanism, that brought about the accident; nor is there any proof to show the rate of speed at which the car came to the edge of the bank. The evidence does show, however, that the car backed down an incline, crossed the edge of the bank at an obtuse angle, and that it was devoid of effective brakes. Thus there is no showing that the absence of the fence entered at all into the cause of the unhappy event; and equally there is no proof that the presence of an ordinary highway fence would or could have prevented the descent of the car, even if there were a legal obligation on the county to provide such a barrier as is commonly used.

Statements are found in cases to the effect that the public authorities have a duty to erect and maintain guard rails, or other suitable warnings, for the protection of travel generally on the highways, against danger so close to a highway as to make travel thereon perilous, or where there are exceptional conditions requiring such protection. (*Flansburg* v. *Town of Elbridge*, 205 N. Y. 423, 429.) It has been said in some cases, as it is being said in the majority

opinion here, that conditions have changed since the automobile has come into general use, that better roads have been provided, that greater speed is practiced, and that more urgent need has arisen for barriers to keep vehicles from running off the road. (*Carner* v. *Town of East Greenbush*, 225 App. Div. 609, 611.) But a careful examination of the decisions of the Court of Appeals in comparable cases does not disclose any change in the law, or in its application by that court. No case is cited where our court of last resort has laid down any new rule in this particular, nor in which it has held that the State or municipality must maintain barriers to keep vehicles from running off the road into ditches or down banks, when they are traveling over that part of the road prepared and maintained for public travel.

If a change in the law be developing, and a new rule is to be applied, what is to be the standard of the proposed barrier? It would be difficult indeed to prescribe a guard rail or fence or other reasonable highway barrier that would meet the variable demand. Practically all automobiles are heavy vehicles (despite the idiomatic reference to " light " cars), and they vary widely in weight and carrying capacity. A barrier that might be thought reasonable, and that would effectively resist the shock of contact with a so-called light automobile weighing a ton, would be evidently inadequate and useless if the contact were made by a loaded truck representing a weight of twenty tons. And this constantly changing requirement, due to weight alone, attests even more formidable difficulty when the force to be met is again varied by the added elements of speed and angle at the point of thrust. The reason seems clear why the Court of Appeals has not held that highway fences must be adequate to prevent cars from being driven off or running off that part of the road which has been prepared for general travel.

There is some evidence that the car in question backed off the road, but why it did so is a matter of theory and speculation. There is no proof of the cause. It was not due nor claimed to be due to any defect in the traveled part of the highway itself. And even if it were known that the driver guided the car off the road under misapprehension of its width, or in the exercise of imperfect judgment, that would not alter the case. The public authorities are not called upon to foresee and guard against each misapprehension, or defect in judgment, which they did not bring about. It is only against the foreseeable accident they are required to guard — not necessarily the exact one that happens, but one of that type. As I view the accident here, it would not be reasonable to hold that the highway authorities were bound to anticipate

that the driver, who had traveled along the bank of the river for miles, would attempt to turn around on a twelve-foot road by driving into an ascending private driveway and backing down into a highway with which he was unfamiliar in the night time, in an automobile without brakes.

The *Best* and *Eaton* cases appear to be decisive of the one under review. Those cases are dissimilar mainly in that in each of them the cause of the accident was known; and in this case it is unknown. In the *Best* case a public bus was being driven on a level county highway along a steep and unguarded embankment four feet from the macadam. The shoulder was covered with four or five inches of fresh loose gravel, and was prepared for travel to the very edge of the bank. The steering gear failed, and the bus headed toward the bank. The chauffeur applied the brakes, and brought the bus to a stop at the edge of the bank, and almost parallel with it. The bank gave way under one wheel, and the bus slid and rolled down sidewise, causing the death of an infant passenger. It did not *run off* the bank. This was held to be an accident which the highway authorities were not required to foresee, and the claim was dismissed (*Best* v. *State of New York*, 203 App. Div. 339; affd., 236 N. Y. 662). In the *Eaton* case the car was being driven on a dirt road that was frozen, slippery and rutted. It ran close to a pond toward which there was a dangerous declivity. The driver attempted to force the wheels out of a rut in order to pass another vehicle, and left the prepared part of the road, went upon grass, snow and ice, and slid down the bank, causing the driver's death. Again the car did not "run off the bank." It was held that the accident was one that could not be foreseen by the town authorities in the exercise of reasonable care, and the complaint was dismissed (*Roberts* v. *Town of Eaton*, 238 N. Y. 420).

I am unable to find any authority which warrants the affirmance of this judgment. It should be reversed, and the complaint dismissed.

CRAPSER, J., concurs.

Judgment and order affirmed, with costs.