MABEL GARROW, as Administratrix of the Estate of GOLDIE R. GARROW, Deceased, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 27602.)

Third Department, December 29, 1944.

*Francis Barry Cantwell* and *B. Gregory Brewster,* attorneys for appellant.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor General; Arthur W. Mattson, Burns F. Barford, Assistant Attorneys-General, Donald C. Glenn, Deputy Assistant Attorney-General,* of counsel), for respondent.

HEFFERNAN, J. There are no disputed questions of fact in this case.

In the years 1915 and 1916 while the State of New York was constructing a terminal on a section of the Barge Canal, pursuant to chapter 746 of the Laws of 1911, it erected a concrete bridge spanning Mill Brook, a small body of water located in the village of Port Henry.

The bridge was about thirty-two feet long and extended in an easterly and westerly direction. On the north and south sides thereof there were concrete parapet walls extending the full length of the structure. The north wall varied from fifteen to seventeen and one-half inches in height and was about sixteen inches wide at the top and about twelve inches wide at the bottom. There were no guard rails or barriers across the bridge or on the sides thereof or on the approaches thereto other than the sidewalls to which we have referred. It is also to be noted that there were no warning signals, danger signs or other notices posted or maintained on the bridge or the approaches thereto which would indicate to those using the same the conditions to be encountered. The width of the bridge between the walls was about twenty feet. It is undisputed that the bridge was constructed and maintained by the State.

About three hundred feet southeast of the bridge there was a municipal bathing beach located on Lake Champlain within the village and owned and maintained by it. A gateway admitting people to this beach was located about ninety feet from the bridge. A roadway made of gravel and cinders, which was also maintained by the village, led from the gateway, turned to the left or northwest and crossed the bridge. The beach and road were laid out sometime after the year 1935.

The Port Henry Terminal Dock on the shore of Lake Champlain was also located easterly of the bridge.

The bridge, and the road leading thereto, were used extensively by the public generally in going to and returning from the bathing beach and also by persons using the terminal dock.

On the afternoon of May 27, 1943, some of the village school children were having a picnic at the bathing beach. About 5:00 P. M. on that day claimant's intestate, Goldie Ruth Garrow, a child aged thirteen years and eight months, at the direction of claimant, her mother, accompanied her two younger brothers to the picnic grounds. In order to reach the grounds the child used her bicycle, the color of which was light blue, and with the operation of which she was familiar. Part of the child's clothing consisted of a pink rayon underslip. While at the beach she visited with two of her schoolmates. She left the picnic grounds at about 5:10 P. M. and was last seen alive riding her bicycle on the right-hand side of the road at a moderate rate of speed in a northwesterly direction rounding a curve toward the bridge.

The child failed to return to her home and a search was instituted to ascertain her whereabouts.

On the morning of May 28th her lifeless body was found in the brook in about four feet of water and approximately five feet east of the west bank and about thirty feet north of the bridge. The bicycle was found partly under the bridge in about six feet of water and about three feet east of the west bank of the brook. When the body was found there were bruises on the right leg about two or three inches above the ankle and also a bruise on the first finger of the right hand.

A streak of blue paint from the bicycle about three inches long appeared on the upper side of and a little to the east of the center of the south side of the north wall of the bridge directly over the spot where the bicycle was found. At this point the wall was sixteen inches high. When the bicycle was removed from the water it was examined and it then appeared there were marks and indentations thereon ground into the paint on the frame. The paint was damaged on the right side of the front and rear forks and on the right side of the rear mudguard about twenty inches from the ground. The tires were inflated and the handle bars were not out of alignment. The streaks or marks on the right side of the bicycle twenty inches from the ground corresponded to the blue paint marks on the bridge when the bicycle was placed twenty inches from the base of the bridge wall and then lowered at an angle to the right

and toward the wall of the bridge. Seven or eight threads of pink rayon about two or three inches long identified as part of the child's slip were found about three or four inches west of the paint marks on the wall.

Deceased is survived by her parents and several brothers. The administratrix of her estate brought this action against the State of New York to recover damages for the alleged wrongful death of her daughter on the theory that defendant was negligent in the construction and maintenance of the bridge in question.

After a trial the Court of Claims dismissed the claim on the merits and from that judgment claimant has come to this court.

We are dealing with an unwitnessed accident and proof of defendant's negligence must depend upon circumstantial evidence.

Defendant rested its case at the close of claimant's proof. No attempt was made to show that the intestate was guilty of contributory negligence, and for the purpose of this review we must assume that she was not. The law presumes that she did not intentionally take her own life.

In a case of this character the proof must indeed be meagre. Under the circumstances disclosed in this record it is not indispensable to a recovery that claimant should produce eyewitnesses as to how the accident to her daughter occurred; it is impossible to do that. It does not follow, however, that a recovery may not be had for that reason.

We are fully cognizant of the rule that negligence is a fault and is not to be presumed, but rather must be proved. While it is true that simply because an accident has occurred, negligence is not to be presumed, still, in determining the question of negligence, the fact that an accident has occurred may be and should be taken into consideration in connection with all other facts and circumstances of the case, for the purpose of determining whether in fact there was negligence. Negligence may be inferred from circumstances surrounding an injury, if not from the fact of injury itself. Negligence, like any other fact, may be inferred from the circumstances, and the case may be such that, though there be no positive proof that the defendant has been guilty of any neglect of duty, the inference of negligence would be irresistible.

More care must be exercised toward children than toward persons of mature age. Children of tender years are entitled to care proportioned to their inability to foresee and avoid the perils that they may encounter. The duty to avoid doing them

an injury increases with their inability to protect themselves and with their childish indiscretions, instincts and impulses.

The bridge in question was erected twenty-seven years prior to the death of claimant's intestate. Since then traffic conditions have radically changed. A parapet which in 1916 would have afforded sufficient protection to the traveler would hardly be adequate today. When this bridge was built travel was quite infrequent. After the public bathing beach was opened many children crossed and recrossed the bridge daily. In view of the growth of traffic it was defendant's duty in the interests of public safety to make such alterations in the structure of the bridge as would accord with changed conditions. (*Sturman* v. *New York Central R. R. Co.*, 280 N. Y. 57.)

This bridge was a much traveled thoroughfare in 1943. It was the duty of defendant to erect barriers thereon to afford sufficient protection for travel generally. We do not need the benefit of expert testimony to tell us that the structure was unsafe and dangerous for travel. Certainly it constituted a trap or pitfall especially in the case of children of tender years. Obviously the presence of a proper barrier or guard rail would have averted this accident. That this child was catapulted from the bridge into the waters below is established beyond question. What caused the fatality? It is not attributable to her own carelessness nor to an intent on her part to destroy herself. It seems to us that the inference is irresistible that she came to her death because of defendant's failure adequately to guard this bridge.

It was the duty of defendant to erect guard rails or barriers along its highways where they are necessary to make the same safe for travel in the use of ordinary care and it is liable in the case of injuries or death to travelers resulting from a breach of its duty in this regard. (*Wolf* v. *State of New York*, 122 Misc. 381, affd. 210 App. Div. 827; *Johnson* v. *State of New York*, 186 App Div. 389, affd. 227 N. Y. 610; *Lendrum* v. *Village of Cobleskill*, 192 App. Div. 828; *Daggett* v. *State of New York*, 242 App. Div. 721, affd. 265 N. Y. 632; *Countryman* v. *State of New York*, 251 App. Div. 509, affd. 277 N. Y. 586; *Huston* v. *County of Chenango*, 253 App. Div. 56, affd. 278 N. Y. 646; *Mason* v. *Town of Andes*, 261 App. Div. 354, affd. 287 N. Y. 616; *Flansburg* v. *Town of Elbridge*, 205 N. Y. 423; *Nicholson* v. *Town of Stillwater*, 208 N. Y. 203; *Griffith* v. *Town of Colesville*, 261 N. Y. 568.)

We are satisfied that defendant was negligent in the construction and maintenance of this bridge and that its negligence was the proximate cause of the death of claimant's intestate.

The court below found that the funeral expenses incurred by claimant amount to $448.

The judgment appealed from should be reversed on the law and facts and judgment directed in favor of claimant and against defendant for the sum of $10,000 damages, together with the sum of $448 funeral expenses, amounting in all to $10,448.

The court in its decision has reversed and annulled certain findings of fact and conclusions of law and has made new findings and conclusions.

HILL, P. J., BLISS and FOSTER, JJ., concur; BREWSTER, J., taking no part.

Judgment appealed from reversed on the law and facts and judgment directed in favor of claimant and against the State of New York for $10,448, together with costs and disbursements.

The court hereby reverses findings of fact contained in paragraphs Nos. 13 and 14 of the decision.

The court hereby annuls conclusions of law Nos. 1, 2, 3, contained in the decision.

The court also reverses findings of fact contained in the State's requests to find Nos. 18, 20, 21 and 25.

The court also annuls the conclusions of law contained in the State's requests to find Nos. 2, 5, 8 and 9.

The court finds as facts the requests contained in claimant's requests to find Nos. 12, 13, 19, 32, 35, 36, 39, 40, 41, 42, 43, 46.

The court makes the conclusions of law contained in claimant's requests to find Nos. 1, 2, 3, 4, 5, 6 and 7.

Judgment is hereby directed accordingly.