Charles T. Major, J.
This claim was filed to recover damages for personal injuries sustained by the claimant while an inmate of Attica State Prison and working on its farm.
On July 20,1953, Leo W. Stedman, a prison guard substituting for John W. Kennedy, the farm manager, then on vacation, assigned claimant and three other inmates as a crew, to load baled hay on a horse-drawn wagon and transport the same to the barn. Two of the inmates were directed to load the bales onto the wagon. Claimant’s duty was to stay on the wagon and pile the hay, while the fourth inmate, Donald M. Wentworth, was designated as the teamster to drive and care for the horses and wagon. These men worked drawing in the hay from breakfast until lunch. During the lunch hour the horses were unhitched from the wagon, harnesses removed, and put in the barn. The inmates were taken by truck to the prison dining hall for lunch.
*836 After lunch, guard Stedman assigned this crew with the same equipment to continue this work, and left the men on their own. No examination was made of the harnesses or wagon. The horses were described as willing, not lazy, and no urging was necessary. The wagon was the flat-bedded type with rubber tire wheels and racks at the front and back. It had no seating arrangement or braking facilities. The harness used at this time was old, cracked, stitches broken, pieces of leather missing, padding was sticking out of the horse collar and the stitches were with burrs. The wagon was driven from bale to bale which were spread across the field. The bales of hay averaged from 70 to 80 pounds each.
Between 2 and 3 o’clock in the afternoon, the wagon, with about three tiers, between 45 and 50 bales of hay thereon, came to about the top of a hill. The teamster was standing on the left front of the load with claimant on the right. After picking up another bale at this point, the horses started with a lurch, went over the crest, down a steep grade for approximately 200 feet. The horses were holding back while the, wagon forged ahead against the backs of the horses at increased speed. The horses became frightened and started to run. The teamster testified that he saw the horses were running away, he had no control over them and, in order to avoid getting hurt, he threw the reins to the ground and jumped off. The claimant remained on the wagon, without receiving any warning or instruction from the teamster. The horses and wagon continued downgrade gaining momentum when the horse on the right side broke clear, leaving the entire burden on the other horse. The left horse then veered sharply to the left drawing the wagon with him, whereupon the bales of hay upon which claimant was standing, rolled out from under him, and he was thrown about 10 feet clear of the wagon onto the ground.
There is no dispute that the accident took place and the claimant was injured. The testimony does not seem to pinpoint the specific act or thing which started the sequence of events leading to the accident. The claimant testified that the teamster yelled at the horses and slapped them on their backs with the reins to start them. The teamster denied hitting the horses at any time, but admitted shouting at them to go. The teamster maintained that it started when the bolster of the wagon broke, allowing the rack to move forward to strike the horses. An examination of the bolster about one week later was made by Mr. Kennedy, the farm manager, who testified that the bolster was not broken.
*837 Negligence should not be presumed, but the fact that the accident has occurred should be considered in connection with all other facts to determine whether there was negligence. Even in the absence of positive proof, negligence may be inferred from the circumstances surrounding injury if not from the fact of injury itself. (Garrow v. State of New York, 268 App. Div. 534, affd. 294 N. Y. 741.)
These inmates were working by direction and not by choice. The teamster had no instruction as to the handling of these horses, and no experience, except as it came to him on this farm. However, all agree that the harness broke and a two-foot piece of leather harness was ripped apart. The steel neck yoke ring, which was described as about three inches to four inches in diameter and about three-sixteenths of an inch thick, was pulled apart and opened up. This would leave the horses without means to hold back the wagon. This ring was not produced at the trial. It had been in the custody of the State after the accident, but the State’s attorney stated that it could not be found and its whereabouts unknown.
As a result of this accident, the claimant sustained a wedged-shape fracture of the anterior surface of the tibia, extending into the joint; left hip and back sprains; injuries to the ligaments and soft tissues of his left knee joint. A cast was applied and the claimant was confined to the Attica Prison Hospital from July 20 to August 13, 1953, when he was discharged from prison. On August 14, 1953, he was transferred to Kings County Hospital, where his old cast was removed and a new and longer one applied at an angle of flexion. On August 21, 1953, he was discharged to the out-patient department, where he received further medical care. The second cast was removed September 30,1953, and claimant used crutches until December, 1953. The claimant suffered considerable pain, and partial permanent loss of motion in flexion and extension at the knee. His knee cap grates. He limps slightly and has difficulty climbing stairs or ladders in his work. He was totally disabled for about five months, and partially disabled for about nine months. Claimant still has pain in his left knee joint, and there is a possibility of a future operation to stiffen his knee. Kings County Hospital bill for claimant’s care is $110.96.
Negligence on the part of the teamster in driving this team of horses is chargeable to the State. (Washington v. State of New York, 277 App. Div. 1079; Sullivan, v. State of New York, 257 App. Div. 893, affd. 281 N. Y. 718.) The court finds that the teamster was guilty of negligence. It was also the duty of the State to furnish claimant with a safe place to work and safe *838 equipment for such work. The furnishing of an inexperienced driver, defective harness, lack of inspection of the equipment, and failure to properly supervise, are acts of negligence chargeable to the State.
The claimant was guilty of no negligence.
Claimant is entitled to an award of $11,110.96 for his injuries, temporary and permanent, pain and suffering, loss of earning power, and all other damages sustained.
The foregoing constitutes the written and signed decision of this court upon which judgment may be entered. (Civ. Prac. Act, § 440.)
Judgment is directed accordingly.