VALERIE HOFFMAN et al., Plaintiffs, *v.* I. HOWARD LEHMAN et al., as Trustees in Reorganization of Surface Transportation Corporation of New York, et al., Defendants.

Supreme Court, Trial Term, New York County, December 17, 1953.

*Christopher L. Ribaudo* and *Morton L. Panken* for plaintiffs.

*George D. Stewart* for trustees, defendants.

*James A. Doherty* and *Phillip Hoffer* for National Transportation Co., Inc., defendant.

FRANK, J. While a passenger in a bus owned and operated by the defendant trustees, the plaintiff, Valerie Hoffman, was thrown from her seat and injured due to a sudden stop. The incident occurred at about 10:15 A.M. in the rainy morning of March 19, 1952, while the vehicle was southbound on Third Avenue between Thirty-fifth and Thirty-sixth Streets, borough of Manhattan, city of New York. The thoroughfare contains two parallel rows of steel pillars which support the elevated railroad structure above it. Four lanes of traffic are provided for vehicles. The pillars create aisles for vehicular traffic; one lane in each direction between the pillars and each curb, and two opposite lanes underneath the structure. These latter are used by the bus line here involved.

It is undisputed that at some point between the intersecting streets a taxicab, overtaking the bus on its right, passed that vehicle and cut between two pillars of the westerly row into its lane of traffic. Both vehicles halted in time to prevent actual contact between them.

The trustees urge that the bus made the sudden stop due to an emergency, for which no liability, as a matter of law, can or should be imposed, and rely on a number of cases cited in their brief (*Mintz* v. *International Ry. Co.*, 227 N. Y. 197; *Kokofsky* v. *City of New York*, 297 N. Y. 553; *Lichtenstein* v. *City of New York*, 270 App. Div. 925). These cases are clearly distinguishable on the facts. In the *Mintz* case the sudden stop occurred when a boy darted in front of the car from behind a vehicle going in the opposite direction. In the *Kokofsky* case the bus stopped suddenly to avoid colliding with a car traveling in the opposite direction, which unexpectedly made a U-turn in the middle of the block in front of the bus. In both these cases the injured plaintiffs were walking or standing in the conveyances involved, and the stated facts do not reveal that other passengers were affected by the sudden stop. The facts in the *Lichtenstein* case are not given in the decisions in the Appellate Division (cited above) nor in the Appellate Term (58 N. Y. S. 2d 243). From the trustees' brief it appears that a boy ran from the sidewalk into the path of the bus.

Even at the risk of redundancy, it must be emphasized that here the passenger was seated and therefore not in the same unstable position as the passengers in the cited cases, and, in addition, this stop was so sudden and violent that other passengers were jarred by it although not injured. We cannot agree that the questions here are matters of law, but are, rather, factual ones (*Miller* v. *Perroni,* 249 App. Div. 763).

The practice of vehicles weaving in and out between the pillars on Third Avenue and similarly constructed thoroughfares in the city of New York is or should be thoroughly familiar to every operator of a motor vehicle in the metropolis. Such automobile maneuvers must be anticipated by every reasonably prudent bus chauffeur whose daily route along Third Avenue presents the problem countless times. The public conveyance should be operated in such manner, under existing conditions, as to avoid subjecting passengers to injury. The operator of a vehicle charged with the knowledge of prevalent conditions may not avoid liability for disregarding them. This court has had occasion to comment upon the duties imposed upon the driver of a vehicle to apply his knowledge of the area in which he is working (*Hegarty* v. *Railway Express Agency,* N. Y. L. J., Feb. 2, 1953, p. 364, col. 7, affd. 282 App. Div. 871).

Although the standard of due care is inflexible, the degree of caution to be exercised in specific situations in maintaining the criterion varies with the time, place and conditions involved and with the foreseeability of the dangers existent (*Railroad Co.* v. *Jones,* 95 U. S. 439, 442; *Mink* v. *Keim,* 291 N. Y. 300, 304; *Sadowski* v. *Long Island R. R. Co.,* 292 N. Y. 448, 455; *Garrow* v. *State of New York,* 268 App. Div. 534, 537, affd. 294 N. Y. 741; *Goldman* v. *New York Rys. Co.,* 185 App. Div. 739; *Caldwell* v. *Village of Island Park,* 304 N. Y. 268, 274).

The court will take judicial notice of facts which are common knowledge. (*Brown* v. *Piper,* 91 U. S. 37; *Wynehamer* v. *People,* 13 N. Y. 378; *Keefe* v. *O'Brien,* 203 Misc. 113; *Town of North Hempstead* v. *Gregory,* 53 App. Div. 350.) "It is a matter of common knowledge that an automobile equipped with good brakes, travelling ten to twelve miles per hour, can be stopped in considerably less than fifteen feet." (*De Temple* v. *Schafer Bros.,* 13 Pac. 2d 446, 448; see, also, *Leavell* v. *Thompson,* 176 S. W. 2d 854; *Chawkley* v. *Wabash Ry. Co.,* 297 S. W. 20.) Under the police department regulations, 44% of total braking power is deemed minimally sufficient to comply with subdivision 1 of section 15 of the Vehicle and Traffic Law requirement for "adequate brakes". At the 44% level, this

bus should have stopped in seven and five-tenths feet at ten miles per hour and within sixteen and nine-tenths feet at fifteen miles per hour. These figures are taken from the police department charts of measurements made with the decelerometer, a mechanical device used by that agency.

Sulla, the bus chauffeur, testified that he was operating his vehicle at a speed of ten to twelve miles per hour and that there was a space of about twenty feet between the front of his conveyance and the cab when he saw the latter and applied his brakes. The distance between the two vehicles was similarly fixed by other witnesses. Sulla should have been able to bring his bus to a stop within this distance without violence or suddenness.

It must be held that defendant Sulla was inattentive to his responsibility under the weather and road conditions present, and he and his employer must be held to be negligent in the operation of the bus in which plaintiff was injured.

There is complete agreement that the operation of the taxicab here involved was careless and negligent. At the trial, no question was raised on this issue. Without elaboration, therefore, it is found that the failure of the cab driver to permit the bus to precede the cab, due to the latter's change of direction, the violation of the traffic regulations (art. 5, § 70, subds. 1–4), and the sudden stopping of the cab constitute negligence and are causally related to the plaintiff's injuries.

The defendant National Transportation Co., Inc., contends that the claim of plaintiff and defendant trustees that its cab bearing license #018904 was so involved is erroneous, not justified and not established by the proof. It is conceded by National that it owns the taxi bearing the numbered plate given, but it vigorously asserts that its vehicle was not in the vicinity of this occurrence at the time. National produced the operator of the vehicle who denied his presence at the scene at any time during the morning in question. In substantiation of this defense, the chauffeur's trip card was received in evidence.

The trip card is unimpressive. Twenty-six trips are entered upon this envelope, none of them in the vicinity of the accident. All of the entries appear to have been made at the same time. Under the heading "No. of Pass.", the entered numerals display a uniformity inconsistent with individual entries made at intervals in a day's work. Those across the page, showing the start and finish of each trip, have an appearance not compatible with entries made at different times. The envelope shows a total of thirty-three trips, but only twenty-six are entered

although there is additional space for the remainder on the reverse side. The sum of $17.65 was delivered to the cashier as the receipts for the entire tour. Giving every benefit in deciphering these items of receipts, the maximum shown is $13.90. The exhibit does not substantiate the testimony of the cab driver and the evidence adduced through him is rejected.

The affirmative proof of identity presents a different problem. One Hammerling, a disinterested, police blotter witness, was a passenger in the bus. He testified that he wrote the number of the cab on a slip of paper which he gave to the bus driver. Other passengers corroborated him. Hammerling did not remember the number but, after his recollection was refreshed, confirmed that it was 018904. The court finds no reason to reject the testimony of this witness. Sulla, the bus driver, testified he received the slip from Hammerling and later, after he had copied the license number onto his report, discarded or destroyed the slip. The defendant National argues that the admission of the report was error because it was not the best evidence. With this, we cannot agree. While it would have been more desirable to have the original slip available, its destruction was not fatal. Hammerling's testimony as to the license number, unsupported by other proof, would be sufficient as a matter of law, and the evidence given by Sulla that he correctly transcribed the number given to him upon his report, which was kept in the regular course of business of his company, is corroborative, and, although secondary proof, is nonetheless competent.

It is decided that plaintiffs have recovery against all the defendants. Valerie Hoffman suffered a trimalleolar fracture of the left ankle. There is some deformity, limitation of motion, and permanency. She was sixty-one years old and employed at an annual salary in excess of $2,000 at the time of the accident. The clerk is directed to enter judgment for the plaintiff Valerie Hoffman in the sum of $12,000, and for Robert Hoffman for his loss of services in the sum of $750.

This constitutes the decision of the court, pursuant to statute. Defendants are granted a stay of thirty days and sixty days to make a case.