PERCY A. COUNTRYMAN, as Executor, etc., of NINA COUNTRYMAN, Deceased, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

(Claim No. 22047.)*

ERNEST L. COUNTRYMAN, by PERCY A. COUNTRYMAN, His Guardian ad Litem, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

(Claim No. 22048.)

CORA J. COUNTRYMAN, by PERCY A. COUNTRYMAN, Her Guardian ad Litem, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

(Claim No. 22049.)

ROBERT P. COUNTRYMAN, by PERCY A. COUNTRYMAN, His Guardian ad Litem, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

(Claim No. 22050.)

IVA E. COUNTRYMAN, by PERCY A. COUNTRYMAN, Her Guardian ad Litem, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

(Claim No. 22051.)

PERCY A. COUNTRYMAN, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

(Claim No. 22052.)

Third Department, July 2, 1937.

*Revg. 159 Misc. 846.

*Lee, Brennan & Bastow* [*S. W. Brennan* of counsel], for the appellants.

*John J. Bennett, Jr., Attorney-General* [*John L. Campbell, Assistant Attorney-General*, of counsel], for the respondent.

HILL, P. J.   Appeal by claimants from six judgments of the Court of Claims dismissing claims which arose when the mother and four children in an automobile which she was driving in the village of Fort Plain, went through a guard rail at the side of a street improved by the State, and over a steep cliff and bank to the bottom of the gorge through which the Otsquago creek ran. The mother was killed and each of the four children received serious injuries.   The sixth claim is filed by the husband and father for money damages of $3,795.10 expended in connection with the burial of the wife and the hospital and medical treatment of the children.   The judgments are based on one decision in which it is found " that the proximate cause of the accident was the loss of control of the automobile by Nina Countryman " (the mother); further, that the children were free from contributory negligence and that the accident was not caused by the negligence of an employee or official of the State of New York.

On Thanksgiving Day, 1930, at four or five in the afternoon, the party had crossed the bridge over Otsquago creek going in an easterly direction, turned to the right (south) on to Kellogg

street, in which there was an up grade of about seven per cent. Near the bridge the road was about thirty feet wide, but one hundred and fifty to two hundred feet south at the place of the accident it was only twenty feet wide and crowning " six inches higher in the center than it is on the edge," and covered with snow and ice. When making the turn decedent shifted the gears, and when the car was examined after the accident it was in second speed. After they had made a wide turn going to the left of the center of Kellogg street, they observed a car parked on the left-hand side between one and two hundred feet from the bridge, the mother turned the car toward the right (the creek side of the road), it began to skid and while going in a diagonal course struck the guard rail, which was three and two-tenths feet from the paved portion of the road, and went over the bank. The mother was " pushing as hard as she could on the brakes." The guard rail was constructed between 1912 and 1915, the posts were cedar or chestnut and the rails were spruce. The life of such posts would be about eleven or twelve years. For five or six years they had sagged and leaned. A witness stated concerning the guard rail, " it looked as though that post there had been pushed over, simply pushed right over and the rails lay down and the fence seemed to me as if it had been pushed right over. It had not broken off, it was just pushed over." The guard rail had shown decay for a long time.

" Defendant was not obliged to construct a barrier sufficiently strong to hold a heavy car from going over such a declivity. [Citations.] All that was required of it was that it should erect such a railing, if any, as would be a sufficient protection for travel generally." (*Roberts* v. *Town of Eaton*, 238 N. Y. 420, 422.) " Here was a much traveled thoroughfare. * * * A roadway which might safely be traveled rapidly narrowed by almost three feet and the adjacent land from being level with the roadway turned into a sharp descending slope of several feet from the edge of the highway. There was no barrier or guard of any kind to mark the edge of the highway, but instead thereof weeds had been allowed to grow up which obscured and concealed such edge. * * * As has often been said, a case of this kind is always more or less perplexing. There is no general and infallible rule by which to determine whether each case should be disposed of as a matter of law or by the verdict of a jury. Every one must largely be determined by its particular features." (*Nicholson* v. *Town of Stillwater*, 208 N. Y. 203, 207, 208.) " They are bound to maintain guard rails or barriers only to protect those traveling within the space prepared and offered for that purpose against dangers in such close proximity thereto as to make traveling on

it perilous or where there are other unusual or exceptional conditions." (*Flansburg* v. *Town of Elbridge*, 205 N. Y. 423, 429.) " The presence of a barrier might not have averted this particular accident, but the absence of one under the circumstances indicates an indifference toward the protection of the public at a place obviously dangerous." (*Sporborg* v. *State of New York*, 226 App. Div. 113, 116.)  " It is well settled that it is the duty of a municipal corporation to erect railings or barriers along the highway at places where they are necessary to make the highway safe and convenient for travelers in the use of ordinary care, and that it is liable for injuries to travelers resulting from a breach of its duty in this regard." (*Johnson* v. *State*, 186 App. Div. 389, 391; affd., 227 N. Y. 610.)   The *Johnson* case involved a curve in the highway as did *Daggett* v. *State* (242 App. Div. 721; affd., 265 N. Y. 632), but in each the gravamen was the lack of a proper barrier.

The State or a municipality is not required to construct a barrier sufficiently strong to hold a heavy car or truck traveling at a rapid rate of speed (*Corcoran* v. *City of New York*, 188 N. Y. 131; *Best* v. *State of New York*, 203 App. Div. 339; affd., 236 N. Y. 662; *Dorrer* v. *Town of Callicoon*, 183 App. Div. 186), but the State or a municipality is required to erect a barrier which will furnish reasonable protection " for travel generally." (*Flansburg* v. *Town of Elbridge*, supra; Johnson v. State, supra; Wolf v. State, 122 Misc. 381; affd., 210 App. Div. 827; *Lendrum* v. *Village of Cobleskill*, 192 id. 828; *Griffith* v. *Town of Colesville*, 261 N. Y. 568.)  " Before the advent of the automobile, barriers were intended chiefly to indicate the presence of danger and to arrest the progress of a horse straying from the beaten path of the highway.  Now conditions no doubt demand greater responsibility and care.  It may be that the State in constructing main highways principally for travel by automobile, should be required at places of unusual danger to locate barriers to stop and hold such a vehicle proceeding at a reasonable rate of speed." (*Carner* v. *Town of East Greenbush*, 225 App. Div. 609, 611.)

The automobile was proceeding slowly in second speed as it approached the corner and grade of Kellogg street.  In going around the sharp corner, decedent, exercising care doubtless to avoid proximity to the edge of the dangerous gorge, made a wide curve, thus being in part on the left side of the street.  The fact that the pavement narrowed abruptly and that a car was parked in her path made it necessary to change her course to the right side of the street.  It was crowned and covered with snow and ice.  This caused her to skid diagonally across the street and into the rotten barrier which, had it been sound instead of decayed at

least would have retarded the slow moving automobile and might have held it. In either event, there would have been some opportunity to escape. This is not similar to a case where a heavy truck or bus going rapidly, comes in contact with a barrier. The automobile had been purchased recently for $125. It was being driven by the mother accompanied by her children, the oldest then fourteen years of age. The finding made by the Court of Claims that she was negligent is unsupported by the evidence.

There is no general or infallible rule as to the location or strength of barriers. They are to be placed where the way is perilous or where there are unusual or exceptional conditions, and they must be of a kind and so located as to furnish " protection for travel generally." The State had recognized the peril and the danger incident to this gorge in close proximity to Kellogg street and had, nearly two decades before, constructed a barrier. It had become decayed and useless through the action of the elements and time had elapsed for the elements to create the condition that existed. That the barrier was decayed was obvious to the casual observer. A sound barrier rather than a decayed one might or might not have averted this particular accident, but the failure of the employees of the State to make replacement of decayed posts indicated an indifference toward the protection of the public at a place obviously dangerous. (*Sporborg* v. *State of New York, supra.*) This failure was actionable negligence.

The judgments should be reversed on the law and facts and the matter remitted to the Court of Claims for the fixing of damages.

RHODES and HEFFERNAN, JJ., concur; McNAMEE and CRAPSER, JJ., dissent, and vote to affirm. (See *Best* v. *State of New York,* 203 App. Div. 339; affd., 236 N. Y. 662.)

Judgments reversed, on the law and facts, and matter remitted to the Court of Claims for fixing damages, with one bill of costs.

The court reverses findings of fact numbered 9, 11 and 12, and disapproves conclusion of law; and makes the following new findings of fact: That the proximate cause of the accident was the unsafe, defective and decayed condition of the guard rail; that the decedent Nina Countryman was free from contributory negligence.