8 N.Y.2d 938 (1960)
Anna McCauley, as Executrix of Roderick McCauley, Respondent,
v.
State of New York, Appellant. (Claim No. 32614.)
Gordon Deshaw, as Administrator of The Estate of Wanda Deshaw, Deceased, Respondent,
v.
State of New York, Appellant. (Claim No. 32615.)
Henry S. Salamy et al., as Administrators of The Estate of Joseph H. Salamy, Deceased, Respondents,
v.
State of New York, Appellant. (Claim No. 32628.)
Court of Appeals of the State of New York.
Argued May 27, 1960.
Decided July 8, 1960.
Louis J. Lefkowitz, Attorney-General (Paxton Blair of counsel), for appellant.
F. Walter Bliss, Adam R. Palmer, Hayward H. Plumadore and Perrin & Daniels for respondents.
Concur: Judges DYE, FULD, FROESSEL and VAN VOORHIS. Chief Judge DESMOND dissents in the following opinion in which Judges BURKE and FOSTER concur.
*940 In each action: Judgment reversed, with costs in this court and in the Appellate Division, and the judgment of the Court of Claims reinstated. On this record, we are satisfied that a preponderance of the credible evidence favors the determination made in the Court of Claims. So viewed, it cannot reasonably be said in light of all the surrounding circumstances, including the weather and road conditions and the driver's conduct, that the fatal happening was due to any neglect, failure or omission of the State to perform a duty owed.
Chief Judge DESMOND (dissenting).
In these wrongful death claims against the State, the evidentiary facts here were undisputed, leaving for decision the ultimate or determinative conclusory facts. The Court of Claims dismissed the suits but the Appellate Division, reversing the judgments of dismissal and making new findings, awarded damages to claimants. Thus, as the case comes to us, the question is: does the weight of evidence favor the trial court's decision or that of the Appellate Division?
*941 About 11 o'clock on the evening of March 3, 1954, an automobile driven by Roderick McCauley, whose executrix is one of the claimants here, was going east on Route 3 in St. Lawrence County approaching a bridge which crosses the Raquette River. In the McCauley car were his son and four other people, all teenagers. The McCauley car and several other automobiles and a bus had earlier travelled to Canton, N. Y., carrying students, players and others to a school basketball game, and at the time of the fatal accident the cars were returning to Tupper Lake where all these people lived. The weather was quite cold with intermittent snow squalls, a stiff wind and resulting low visibility. The 24-foot-wide Route 3 had been plowed shortly before this accident over its whole width and on part of the adjoining shoulders. In other words, the snow had been pushed by the plows about 3 feet off the shoulder of the road with the result that a driver could not see where the paved highway ended and the shoulder began. The shoulder on driver McCauley's southerly or right-hand side as he proceeded east toward the bridge was from 2 to 5 inches lower than the paved highway. The highway surface, because of weather conditions and because of the recent plowing and because it had not been sanded, was partly frozen and quite slippery. Indeed, the McCauley car had slipped off the highway some distance back. When the McCauley car was about 600 feet west of the bridge over the Raquette River, lights were seen coming toward Route 3 from the driver's left and it was afterwards determined, although it was not so easy to know it at the time, that these lights were of a snowplow moving on an old Route 3 which approaches new Route 3 from the north. McCauley, whose car was proceeding quite slowly at the time apparently because of the lights which he saw coming from his left, directed his car gradually over to his right or toward the snowbank at the edge of the plowed area, so that his right wheels went onto the shoulder. He then drove ahead, with the right wheels on the shoulder, in the same direction he had been moving, that is, easterly and toward the bridge. When he got near the bridge he began to ease the car back off the shoulder onto the paved road, possibly because if he had left the right wheels on the shoulder he would have been heading toward the bridge abutment. As he tried to put his car back onto the paved road, the front wheels responded but the rear end did not swing over. Then the rear end suddenly moved *942 over to the left and the car began its progress up along and across the road, ending up with the front end of the car passing between two posts located on the slope north of Route 3, west of the bridge, and somewhat below the north edge of the highway. The car plunged into the river, resulting in the death by drowning of the three persons whose estates are the claimants in this suit.
The Trial Judge held that there was no emergency requiring McCauley to drive onto the shoulder and that any negligence of the State as to the highway or the shoulders or as to the slope and posts on the northerly side of the road was not the proximate cause of the accident. The court found that the sole cause of the accident was the negligent manner in which McCauley drove his car onto, along and from the shoulder.
On appeal by the claimants to the Appellate Division, that court reversed, on the law and the facts, fixed the damages of all three claimants, and directed judgments accordingly, from which judgments the State appeals to this court as of right. The Appellate Division reversed all inconsistent findings of the Court of Claims and made new findings that McCauley was guilty of no negligence either in going onto the shoulder or in the way he drove onto or from the shoulder, that the difference in elevation between the shoulder and the pavement on the southerly side of Route 3 west of the bridge constituted negligent maintenance by the State, and that the guardrails or posts on the other side of the road were negligently set and maintained by the State and were partly the cause of the disaster. The Appellate Division's majority opinion, after repeating the facts herein summarized, said that McCauley did not act negligently in slowly driving onto the shoulder to avoid what he thought might be a danger from the snowplow coming into his road from his left. The Appellate Division majority called attention to Goodwin v. State of New York (298 N.Y. 873) where claimant was forced by an approaching automobile to drive onto a shoulder lower than the paved road and in trying to get back onto the pavement lost control and shot across the road into a tree. Goodwin had a little more reason to go onto the shoulder, perhaps, than our driver McCauley but McCauley had reason enough and, furthermore, McCauley could not know he was going onto the shoulder which had been plowed level with the pavement.
*943 We know that it is a normal, automatic reaction of a driver to swerve away from an object so approaching his car, especially when visibility is poor. The Appellate Division majority correctly said that McCauley would not have been justified in slamming on his brakes or in performing any other reckless maneuver but that pulling off onto the shoulder away from the snowplow was a reasonable thing to do, even though it turned out afterwards that the snowplow did not drive over onto McCauley's lane. The Appellate Division majority held further that after getting onto the shoulder McCauley was not required by law to stop his car and that he acted reasonably in slowly proceeding on and slowly turning back onto the highway. The majority held that McCauley was not negligent at all. It found that the State was negligent in leaving the shoulder on the south side of Route 3 lower than the pavement and was negligent, also, in the way the posts or rails on the other side were installed and maintained. On that side of the road the bank was quite steep, as the Appellate Division pointed out, and the posts were spaced too far apart, with 10.3 feet spacing instead of 6.3 feet as provided by the plans which the State itself had prepared for protecting this area. There was uncontradicted evidence by an engineer that the posts were not set according to reasonable engineering practice. The Appellate Division majority said that, because of the steep drop and the deep waters beyond, this was a particularly dangerous place requiring appropriate protective installations. On this point the court cited Garrow v. State of New York (294 N.Y. 741), a much weaker case for liability than the present one. The Garrow litigation arose out of an unwitnessed accident where a girl bicyclist went over the low parapet of a bridge and the courts held the State liable for lack of a suitable guardrail on the parapet.
Two of the Appellate Division Justices wrote dissenting opinions. One dissenting Justice thought that McCauley's speed of about 30 to 35 miles an hour as he approached the scene was too high under the circumstances, that there was no emergency requiring him to go onto the shoulder, that the right-hand shoulder was not negligently maintained, and that the possibility of a car skidding across the road from one side to the other was so remote that the State was not required to anticipate it. He thought that McCauley's own negligence was the *944 sole proximate cause. The other dissenting Justice agreed that there was no emergency. However, he found that, while the driver's going onto the shoulder would not have justified dismissing the claims, nevertheless the whole fact picture of this accident was such as was not reasonably to be anticipated or foreseen.
As to where the weight of evidence lies, there is no infallible rule or test. But the way in which the accident happened is clear and undisputed and we see no proof of any real or causative negligence on the part of this driver. He seems to have been driving quite cautiously. As to the State's causative fault, we see that the highway surface and shoulders had been put or left in a dangerous state and there was no adequate or safe barrier on the opposite slope to prevent a car going in the river. The real question, therefore, is as to whether this accident was foreseeable or, putting it another way, whether the State's negligent construction or design on the opposite slope plus its negligence as to leaving the road surface in an icy, slick condition with an obscured condition of depressed shoulder surface was shown by the weight of the evidence to have been a proximate cause of this accident. We answer in the affirmative. This comparatively narrow highway had been so plowed as to produce an icy sheet, and left unsanded. Pushing the snow off the shoulders left the bounds of the pavement unmarked. It was within the bounds of reasonable anticipation that an ordinary skid would send a car across the road and down the opposite slope between the widely spaced guardposts. The barrier on the opposite or northerly side of the road must have been put there to protect, not cars going west, but cars going east as was McCauley's. The layout was such that it would be most unlikely that a car traveling west would slide down that slope. The Appellate Division was therefore justified in finding that the guardrails were so negligently located and maintained as to create a danger and "were a part of the cause of the disaster". Barriers must furnish reasonable protection "`for travel generally'" (Countryman v. State of New York, 251 App. Div. 509, 512, affd. 277 N.Y. 586).
The judgments should be affirmed, with costs.
Judgments reversed, etc.