GRACE TERRANELLA, ANDREA TERRANELLA
AND ROSE TERRANELLA CHUN *v.* CITY AND
COUNTY OF HONOLULU.

No. 4911.

JANUARY 11, 1971.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON
AND KOBAYASHI, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

Plaintiffs-appellants Grace Terranella, Andrea Terranella and Rose Terranella Chun brought suit against defendant-appellee City and County of Honolulu to recover damages for personal injuries and property damage sustained as a result of a one car automobile accident on Kamehameha Highway, approximately one-half mile Kahuku of Heeia Kea Pier. The action was based upon the contention that defendant City and County of Honolulu knowingly and negligently maintained Kamehameha High-

way in a dangerous and defective condition in that it failed to repair a rut adjacent to the paved portion of the highway and as a direct and proximate result of the defendant's aforesaid negligence, the automobile accident occurred. A jury trial was held and at the close of plaintiffs' evidence, the judge granted a directed verdict in favor of the City and County of Honolulu.[1] This is an appeal from that order and judgment.

Appellants allege that the trial court erred in ruling as a matter of law that:

(1) The construction and design of the road was not defective;

(2) The City and County was not negligent with respect to the maintenance of the road and shoulder in that the evidence raised an issue of fact and the matter should have been submitted to the jury for its determination.

The evidence introduced at the trial showed that on November 11, 1964, Grace Terranella and her two daughters Andrea and Rose, were traveling from Kahuku to Kaneohe on Kamehameha Highway. Grace Terranella, who was driving the family automobile, testified that, as they approached a portion of Kamehameha Highway, approximately one-half mile Kahuku of the Heeia Kea Pier, the

---

[1] At the conclusion of plaintiffs' evidence, counsel for the City and County made an oral motion for directed verdict and the judge ruled as follows:

The City and County moves for a directed verdict upon the ground that there is not a scintilla—

THE COURT: Directed verdict—

MR. BETTS: Directed verdict for the Defendant City and County of Honolulu on the grounds that there is not a scintilla of evidence to sustain the allegations of the plaintiffs to the following: that there was defective design of the highway in question; two, that there was defective construction of the highway in question; and, three, that there was negligent maintenance of the highway and the shoulders.

 *     *     *     *     *

THE COURT: All right. The Defendant City and County of Honolulu's motion for a directed verdict is granted.

road was curvy, there was traffic coming the other way, and as she was executing a turn she felt a sudden bumping and swaying motion in the operation of her automobile. Immediately thereafter, the automobile slid down the road at a 45 degree angle and finally veered off the highway down an embankment and into a group of trees. The three plaintiffs received severe personal injuries, those of plaintiff Andrea Terranella being the most serious.

An independent eyewitness to the accident, Mr. Dudley Hearn, who had been following the Terranella vehicle for approximately six to ten miles prior to the accident, testified as follows: that while he was following the Terranella vehicle he noticed that their car swayed slightly as the front right wheel dropped off the road and the rear portion of the automobile swung over into the left-hand lane; that the vehicle slid down the road, veered off the highway down a steep embankment and finally rested in an open ditch and bed of trees; and that after administering first aid to the Terranellas, he walked back along the roadway and observed at the point at which the Terranella vehicle dipped off the road there was a rut adjacent to the paved portion of the highway that was some seven or eight inches deep and approximately one and a half car tires in width.

The evidence also showed that the portion of Kamehameha Highway in the area of the accident was originally a concrete highway, that a layer of asphalt has now been laid down over the original concrete, and that the shoulder area adjacent to and abutting the paved portion of the roadway is comprised of dirt and aggregate rock. Furthermore, in the Pre-Trial Order, the City and County of Honolulu admitted that it designed, constructed, maintained and repaired the portion of Kamehameha Highway and the shoulders adjacent thereto which constitute the situs of the accident.

Additional testimony by the investigating police officer

and residents of the area established that the shoulders adjacent to Kamehameha Highway at the situs of the accident contained ruts varying from four to six inches in depth, that the ruts had been a problem over a period of at least four years, and that this problem resulted in four prior accidents of the nature here involved.

The law which imposes a duty on the City and County to maintain and repair the county highways is found in HRS § 265-1 which states in relevant part:

> § 265-1. *General supervision.* The several boards of supervisors or other governing bodies of the several political subdivisions of the State shall have the general supervision, charge, and control of, and the *duty to maintain and repair, all county highways....* (Emphasis added.)

Defendant City and County resists this appeal by arguing that it owes no duty to maintain the *shoulders* of a highway other than to a driver who is compelled to leave the traveled portion of a highway in an emergency situation. It reasons that the shoulders of a highway are not constructed for the purpose of being traveled over, and are not ordinarily regarded as part of a highway within the contemplation of the law imposing a duty of maintenance on a governmental body with jurisdiction over the particular portion of highway.[2] As authority for this proposition appellee cites a group of New York decisions of the Court of Claims,[3] a decision of the Appellate Division of the Supreme Court, Third Department,[4] and a 4-3 decision of the Court of Appeals.[5]

[2] *See* HRS § 265-1 cited *supra.*

[3] Eckerlin v. State, 17 Misc. 2d 224, 184 N.Y.S.2d 778 (Ct. Cl. 1959); Harrison v. State, 19 Misc. 2d 578, 197 N.Y.S.2d 662 (Ct. Cl. 1959); Gilbert v. State, 56 N.Y.S.2d 232 (Ct. Cl. 1945).

[4] Guyotte v. State, 22 App. Div. 2d 975, 254 N.Y.S.2d 552 (3d Dept. 1964).

[5] McCauley v. State, 8 N.Y.2d 938, 204 N.Y.S.2d 174, 168 N.E.2d 843 (1960).

We do not concur with the reasoning of appellee and the decisions of the New York courts. We think the required determination of what is and what is not an "emergency" would be exceedingly difficult and could only lead to hopeless confusion. Furthermore, such a rule would create a temptation on the part of an injured driver in cases involving defects in shoulders to describe the circumstances surrounding a departure from the paved portion of a highway as having been required by an "emergency" regardless of his real reason for using the shoulder.

Instead, we think the present statute contemplates a duty on the part of the proper county authorities to exercise ordinary care to keep safe not only the part of the road or highway customarily used by the traveling public, but also the part contiguous to the traveled part,[6] and, at least where the defendant had or should have had notice or knowledge of the irregularity in the shoulder, it should be held liable where the shoulder was found to be defective and a menace to users of the highway. *Alwood* v. *Los Angeles,* 139 Cal. App.2d 49, 293 P.2d 69 (1956); *Simmons* v. *Cowlitz County,* 12 Wash. 2d 84, 120 P.2d 479 (1941); *La Bella* v. *Town of Easton,* 128 Conn. 268, 21 A.2d 926 (1941); *Collins* v. *State Highway Comm.,* 134 Kan. 278, 5 P.2d 1106 (1931). As the court states in *Simmons* v. *Cowlitz County, supra,* at 481, "That improved portion of this road which was adjacent to the edge of the road, the shoulder of the road or highway as it is called, was as much a part of this road or highway as any part of the road. [Citations omitted.] Appellants could lawfully use any portion of [the] road and the graveled portion of the shoulder adjacent to the edge of that road as well as the other portion; in fact, by its improvement in the same manner as the

---

6 However, we do not view this duty as requiring the shoulders to be of the same quality or composition as that of the road or highway but only that the shoulders be maintained in a reasonably safe manner.

other portion of the road was improved, the county invited its use by the traveling public."

To hold otherwise might lead to nonsensical and anomalous results. The following language in a case holding the State Highway Commission of Kansas liable for injuries caused by ruts in a dirt shoulder is illustrative. "The present statute contemplates liability for defects in highways improved by hard surfacing, and the liability is not limited to defects in the hard surface, as for example the concrete slab on U.S. 40. There was testimony that the purpose of shoulders is to support the concrete slab, and not to provide a way for travel, which is true in a sense. But a hardsurface highway may be defective because it has no shoulders. Lack of any shoulder for a concrete slab 18 feet wide, 18 inches above the surface, and a mile long, would manifestly render the highway defective for purposes of travel. Of course the slab is intended to be and is the traveled way; but it is a matter of common knowledge that careful automobile drivers not only may on occasion, but frequently must, use the shoulders to some extent as a part of the highway, and a pitfall in a shoulder, adjoining or even adjacent to the slab, may constitute a defect in the highway." *Collins* v. *State Highway Comm., supra,* 134 Kan. 278, 283, 5 P.2d 1106, 1109 (1931).

How far the shoulder extends beyond the part of the road or highway customarily traveled will, of course, depend upon the facts and circumstances of each case. Certainly, one indication of a shoulder's width is the portion at the edges of a paved highway designed, constructed, maintained and repaired by the county authorities. And in many cases the shoulder is clearly delineated by a concrete curb.

Although we hold that the proper county authorities have the duty under HRS § 265-1 to exercise ordinary care to keep safe the shoulders of all county roads and high-

ways, this does not preclude them from asserting permissible defenses in actions brought against them for injuries sustained from alleged defects in the shoulders. Thus, any question as to the manner in which the injured party used the shoulder can properly be raised as an issue of an asserted defense. We need not decide when, why, or how the shoulders of highways or roads should be used by the traveling public. All that we are deciding in this case is that the duty imposed upon county authorities by HRS § 265-1 to maintain and repair all county highways includes the duty to also maintain and repair the shoulders of those highways.

From the evidence introduced by the plaintiffs-appellants at the trial and summarized in this opinion, it is clear to us that the trial court erred in ruling as a matter of law that the evidence did not raise an issue of fact with regard to the alleged negligence of the City and County's maintenance of the road and shoulder. The testimony of Mr. Dudley Hearn, an independent eyewitness to the accident, coupled with the testimony of the investigating police officer and several residents of the area where the accident occurred, to the existence of a rut adjacent to the paved portion of the highway raised a clear issue of fact which should have been submitted to the jury for its determination. We therefore reverse the judgment of the trial court and remand this case for a new trial.

*Martin Anderson* (*George L. Dyer, Jr., Robert G. Hite* and *Vernon Y. T. Woo* with him on the briefs, *Jenks, Kidwell, Goodsill & Anderson* of counsel) for appellants Andrea Terranella and Rose Terranella Chun, and *Ronald D. Libkuman* on the brief (*Libkuman, Shimabukuro & Ventura* of counsel) for appellant Grace Terranella.

*George Lehleitner,* Deputy Corporation Counsel (*Paul Devens,* Corp. Counsel, *Harold K. C. Hu* and *Wayne Luke,* Deputy Corp. Counsel, on the brief) for appellee.