SHARON PICKERING, et al., Plaintiffs-Appellants *v.*
STATE OF HAWAII, et al., Defendants-Appellees

NO. 5604

DECEMBER 8, 1976

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
AND CIRCUIT JUDGE CHANG IN PLACE OF
KOBAYASHI, J., DISQUALIFIED AND
CIRCUIT JUDGE KATO IN PLACE OF
KIDWELL, J., DISQUALIFIED

OPINION OF THE COURT BY MENOR, J.

This is an appeal by the plaintiffs-appellants from an
order granting summary judgment in favor of the defendant

State of Hawaii. The State had been made a party defendant in a suit for damages arising from the death of Clifford Pickering in a motor vehicle collision on Kalanianaole Highway on April 17, 1971. The other defendants were Saul C. Keliikoa, a minor and the driver of the automobile which struck Pickering's car, and his parents. The action was initiated in circuit court on behalf of Mr. Pickering's estate, his widow, and his children.

Defendant Saul C. Keliikoa, at 2:45 a.m. on the morning of April 17, 1971, was driving mauka toward Honolulu on Kalanianaole Highway, approaching the Kailua Drive-In Theater. He was sixteen years old, driving a car belonging to Delbert Perry's father, and he had three passengers riding with him — Delbert Perry, Allen Mari and Warren Takahashi — all of whom were asleep. The evening had been taken up in beer-drinking in Ainakoa Park, dropping in on a dance at the University of Hawaii, shooting pool in Kahala, and driving to Kailua. They were homeward bound when the accident occurred.

As he neared the theater, Keliikoa fell asleep at the wheel. The last thing he remembered was the Kailua Drive-In Theater sign. Keliikoa's car veered to the left, hit the median curb approximately 329 feet mauka of the Kapaa Quarry Road intersection (which is located near the Kailua Drive-In Theater), vaulted into the air, landed on top of the median guardrail twelve feet beyond the point of initial contact with the medial strip, demolished a sign erected between the two sides of the guardrail, continued uphill for an additional ninety-eight feet (by which time it was off the guardrail and on the opposite side of highway), and struck Pickering's car. The momentum of Keliikoa's car pushed Pickering's car thirty-three feet beyond the point of impact and continued an additional fourteen feet before coming to a complete stop.

The plaintiffs-appellants based their claim against the State of Hawaii on the alleged negligent design and construction of the median barrier which divided that portion of the highway where the accident occurred. They contended that the manner of design and construction of the medial strip and

barrier actually caused the collision by decreasing Keliikoa's reaction distance and by providing a ramping effect which resulted in his vehicle going over the median barrier and into Pickering's lane. The circuit judge dismissed these contentions and ruled that the State was entitled to summary judgment as a matter of law.

Summary judgment is to be granted only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Abraham v. Onorato Garages*, 50 Haw. 628, 446 P.2d 821 (1968); *Aku v. Lewis*, 52 Haw. 366, 477 P.2d 162 (1970). Issues of negligence are ordinarily not susceptible of summary adjudication, 6 Moore's Federal Practice ¶ 56.17[42] (2d ed. 1948); however, where there is no dispute in the evidence before the trial court, it has the duty to pass upon the question of negligence and proximate cause as a matter of law. H.R.C.P. Rule 56(c); *Struzik v. City and County of Honolulu*, 50 Haw. 241, 437 P.2d 880 (1968); *Carreira v. Territory of Hawaii*, 40 Haw. 513 (1954).

The trial court correctly found that the State was not negligent as a matter of law.

The relevant portion of Kalanianaole Highway was designed and constructed (between 1949 and 1951) in conformity with the design and construction standards established for Federal-aid highways by the federal government. See U.S. Department of Commerce, Bureau of Public Roads, Police and Procedure Memorandum No. 40-2 (1954). The median barrier was designed and constructed between 1966 and 1967. The record shows that the completed relevant median guardrail was approved and accepted by the United States Bureau of Public Roads in 1967. The State asserts that it was designed and constructed in conformity with federal standards. The appellants correctly point out, however, that "the type of metal to be used, the width of the barrier, the height of the barrier, the depth of the barrier, the placement of the barrier, the height of the medial strip, the substances used in constructing the medial strip, and the actual location of the median barrier on the medial strip" were all engi-

neering decisions not specifically covered by the federal standards. And even assuming that they were, compliance with established statutory and administrative standards are not necessarily conclusive on the issue of negligence. *See* Restatement of Torts, Second, § 288C (1965); *Potter v. Battle Creek Gas Co.*, 29 Mich. App. 71, 185 N.W.2d 37 (1970); *Grand Trunk Ry. Co. v. Ives*, 144 U.S. 408 (1892).

Nevertheless, there is nothing in the record before us, from which the negligence of the State in the design and construction of the guardrail may reasonably be inferred. The relevant portion of the guardrail consisted of two W-section steel rails, approximately two feet apart, bolted to steel I-beam posts spaced nine feet apart. The barrier stood two feet above the central axis of the medial strip which had a curb height of six inches. The medial strip which separated the lane being travelled by Keliikoa and the lane in which the Pickering vehicle was travelling was twelve feet in width. The location of the guardrail in relation to the medial strip was in conformity with federal standards. The scene of the accident was a straight stretch of highway. The mere fact that the guardrail was unable to contain the Keliikoa vehicle, which was travelling at a speed of 40-45 miles per hour immediately prior to the driver falling asleep at the wheel, was at best a neutral circumstance on the issue of the State's negligence. *See Overton v. Wenatchee Beebe Orchard Co.*, 28 Wash.2d 377, 183 P.2d 473 (1947).

The appellants, however, have urged this court to consider two letters from experts allegedly indicating that the design and construction of the median guardrail was inadequate and that proper design and construction of the median guardrail would have prevented the accident or at least have substantially diminished its severity. A letter from one Derwyn Severy, a research engineer, states that "[t]he median barrier was not of a design adequate for the purpose of its installation and was improperly installed." The second letter from one Thomas Schultz, a highway engineer, states that "[m]y general conclusion is that the guardrail was installed at least 6 inches too low and that a proper installation in all

likelihood would have prevented the collision between the two vehicles or at least substantially reduced the severity." The problem with these letters is that they were not presented to the trial court in its determination of the State's motion for summary judgment, but were instead filed with the trial court sometime after the entry of summary judgment. Evidence outside the trial record may neither be appended nor referred to in the appellate brief unless settled and approved by the trial court pursuant to H.R.C.P., Rule 75(c). *State v. Onishi*, 53 Haw. 593, 499 P.2d 657 (1972); *Orso v. City and County of Honolulu*, 55 Haw. 37, 514 P.2d 859 (1973). This court cannot consider such evidence outside the record, which was not before the trial court, for purposes of appellate review. *Id.*; 9 Moore's Federal Practice ¶ 210.04[1] (2d ed. 1948).

The State is not the insurer of the personal safety of every member of the motoring public. The duty of the State is to design and construct its highways in such a manner as to make them reasonably safe for their intended uses, and thereafter to maintain them in a reasonably safe condition. *Ikene v. Maruo*, 54 Haw. 548, 511 P.2d 1087 (1973); *Boyce Motor Lines v. State*, 280 App. Div. 693, 117 N.Y.S.2d 289 (1952); *Overton v. Wenatchee Beebe Orchard Co., supra*. It is not bound to provide for every possible happening on its highways. It is not required to exercise extraordinary care to guard against unusual accidents. In *Ikene* we held that the State was under no duty to make its highways safe for vehicles travelling in excess of the posted speed limit. Neither was the State here required to build a barrier strong enough and high enough to withstand the impact, as well as to contain, a fast-moving vehicle completely out of control as a result of its driver having fallen asleep at the wheel. *Cf. Overton v. Wenatchee Beebe Orchard Co., supra*. The burden of such a requirement upon the State, which has the responsibility for the construction and maintenance of many miles of highways, is only too obvious.

No guardrail was required by the federal standards for this particular section of the highway, and there is nothing in the record or in the circumstances of this case which would

have required the construction of the guardrail as a necessary component of the inherent safety of that portion of the highway. The appellants themselves concede that had the State decided not to construct the barrier, as an added precautionary measure, it would have been a discretionary decision impervious to attack under HRS § 662-15(1). *See Rogers v. State,* 51 Haw. 293, 459 P.2d 378 (1969).

The conduct of Keliikoa in falling asleep at the wheel was the sole proximate cause of the accident which claimed the life of Clifford Pickering.[1] There is no dispute that sometime between the time Keliikoa saw the Kailua Drive-In Theater sign on his way mauka on Kalanianaole Highway and the moment of impact with the median curb, Keliikoa fell asleep, lost consciousness, and thereby lost control of his car. There was no direct evidence concerning Keliikoa's speed at the moment he collided with the median curb, but the affidavit of Officer Satoru Takamine (one of the investigating officers at the scene of the accident) showed extensive damage to the median curb, the medial strip, the median guardrail, the wooden traffic control construction sign between the two metal sides of the median guardrail, the pavement, and the vehicles of both Pickering and Keliikoa, as a result of the accident. By the time it had come to its final resting place on the opposite side of the highway, Keliikoa's vehicle, despite these stationary and moving obstructions, had travelled 157 feet from the point where it first left the pavement. In his deposition, Keliikoa recalled only that he was driving mauka at 40-45 miles per hour preceding the accident. The speed limit for that area was 45 miles per hour.

Affirmed.[2]

---

[1] Whether the fact of Keliikoa's falling asleep while driving constituted actionable negligence is not in issue. Courts in other jurisdictions have held, as a general rule, that the mere act of falling asleep is not conclusive on the issue of the driver's negligence. *See* Annotation, "Automobiles — Illness or Drowsiness," 28 A.L.R.2d 44.

[2] We do not reach the question of whether the design and construction of the guardrail was a "discretionary act" within the meaning of HRS § 662-15(1). *See* Rogers v. State, 51 Haw. 293, 459 P.2d 378 (1969); Rodrigues v. State, 52 Haw. 156, 472 P.2d 509 (1970).

*Warren Price, III (David J. Dezzani* with him on the brief) for plaintiffs appellants.

*Shirley Smith,* Deputy Attorney General for defendant appellee.