DOROTHY ANDERS, Plaintiff-Appellee, v. STATE OF HAWAII, Defendant-Appellant

NO. 6065

FEBRUARY 8, 1979

RICHARDSON, C.J., OGATA, MENOR AND KIDWELL, JJ., AND RETIRED JUSTICE KOBAYASHI ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal by defendant-appellant State of Hawaii (hereinafter State or appellant) from a judgment in favor of plaintiff-appellee Dorothy Anders.
We affirm.

### ISSUES

I. Whether the trial court erred in finding that the State breached its duty to maintain the highway, including the shoulder thereof, in a reasonably safe manner.

II. Whether the trial court erred in concluding that the sole proximate cause of the collision was the State's failure to maintain the highway, including the shoulder thereof, in a reasonably safe manner.

### STATEMENT OF THE CASE

Appellee brought an action against appellant in circuit court pursuant to the State Tort Liability Act.[1]

After a nonjury trial[2] the court rendered judgment for appellee in the amount of $84,534.33.

The trial court's findings of fact, among other things, stated:

.    .    .    .

---

[1] Chapter 662, Hawaii Revised Statutes.

[2] HRS § 662-5 provides:
   Any action against the State under this chapter shall be tried by the court without a jury.

3. The road right-of-way of said Kamehameha Highway at the scene of the collision, including the paved portion thereof and the shoulder thereof, is 50 feet in width. The paved portion of said road right-of-way was designed and constructed to a 20-foot width, consisting of two 10-foot wide traffic lanes.

4. The paved portion of said Kamehameha Highway was never reconstructed or intentionally altered to a width of less than 20 feet prior to the time of the collision.

5. At the time of the collision, a rut existed immediately adjacent to and on the mauka side of the paved portion of said Kamehameha Highway approximately 50 feet from the Kahuku end of the Waiahole Bridge. This rut measured approximately six feet long, six inches deep and twelve inches wide.

6. The paved portion of Kamehameha Highway at the scene of the collision consisted of a top layer of asphalt pavement, supported by a base of concrete. At the time of said collision, the top layer of asphalt was worn away immediately adjacent to said rut, leaving the mauka traffic lane less than ten feet in width.

7. Defendant knew or should have known of the existence of said rut and said worn pavement prior to said collision and should have repaired same, as said rut and worn pavement constituted a hazard to the public in general and to Plaintiff in particular.

.   .   .   .

10. As Plaintiff's automobile approached the Waiahole Bridge, one or both of the tires on the right side of the automobile fell from the edge of said worn pavement into said rut which caused the automobile to jump, causing Plaintiff to lose control of the automobile and to swerve into the makai (oncoming) traffic lane. Plaintiff attempted to return her automobile to the mauka traffic lane, but before she was able to do so, her automobile collided with a car traveling in the opposite direction.

.   .   .   .

The trial court's pertinent conclusion of law stated:

. . . .

2. The sole proximate cause of the collision in which Plaintiff was involved on December 22, 1973, was the failure of Defendant to maintain Kamehameha Highway, including the shoulder thereof, in a reasonably safe manner for the use of the public in general and Plaintiff in particular.

. . . .

### STATEMENT OF FACTS

Appellee was involved in an automobile accident in the late afternoon on December 22, 1973. The accident occurred at the Kahuku end of the Waiahole Bridge on Kamehameha Highway. As a result of the accident appellee suffered severe injuries to her body.

Kamehameha Highway at this vicinity was owned and maintained by appellant on the date of the collision and for a period of at least three years prior thereto. The paved portion of the highway at the scene of the collision was designed and constructed to a twenty-foot width, consisting of two ten-foot wide traffic lanes.

At the time of the collision, there was a rut immediately adjacent to and on the mauka side of the paved portion of the highway approximately fifty feet from the Kahuku end of the Waiahole Bridge. This rut measured approximately six feet long, six inches deep, and twelve inches wide.

The paved portion of the highway at the scene of the collision consisted of a top layer of asphalt pavement supported by a base of concrete. At the time of the collision, the top layer of asphalt was worn away immediately adjacent to the rut, leaving the mauka traffic lane less than ten feet in width.

Shortly prior to the collision, appellee drove her uncle's automobile from Church College in Laie in the Kaneohe direction on Kamehameha Highway, making no stops up to the scene of the collision. The traffic was light to moderate. The weather was overcast, and the road surface was dry.

Two or three weeks prior to the accident, appellee's automobile had been checked by a mechanic, and a new set of tires had been installed. There was no evidence of any malfunction of the automobile at the time of the collision.

As appellee's automobile approached the Waiahole Bridge, one or both of the tires on the right side of the automobile fell from the edge of said worn pavement into said rut which caused the automobile to jump, causing appellee to lose control of the automobile and to swerve into the makai (oncoming) traffic lane. Appellee attempted to return her automobile to the mauka traffic lane, but before she was able to do so, her automobile collided with a car traveling in the opposite direction.

Several employees of the State Department of Transportation testified regarding maintenance of the highway near the scene of the collision. The construction maintenance supervisor testified that when his office receives complaints or requests for repairs in a particular area, the complaint is sent to the [road] shoulder repair crew. The foreman of the shoulder crew testified that after the shoulder repair crew receives a complaint, up to two or three months may elapse before repairs are made.

There is evidence that on September 12, 13, or 14, 1973, the shoulder repair crew temporarily stabilized the shoulder area near the scene of the collision. The foreman of the shoulder repair crew testified that they also made temporary "repairs" of the rut, which was then two or three inches deep, by "[ripping] it out" thirty inches deep and two and a half feet wide, filling it with coral, and compacting the coral with a roller. There is no evidence of any other additional repairs, temporary or permanent,[3] to the shoulder area or the rut between September 14 through December 22, 1973.

The record shows that temporary repairs lasted only a short period under the pressure of the traffic on the highway and the rains falling on the area of the accident.

---

[3] A more permanent repair would consist of compacted hot asphaltic mix. Temporary repairs could consist of cold asphaltic mix.

The foreman [hereinafter area foreman] of the highway maintenance crew for the Hauula District, which includes the area near the Waiahole Bridge, testified that he and his crew made daily inspections of Kamehameha Highway "from one end to the other," looking for potholes, ruts, and dropoffs at the edge of the pavement, among other things. He testified that he did not notice the rut.

A witness testified that grass growing on the shoulder did not obscure the rut or the road adjacent to the rut.

Three employees of the State who testified acknowledged, after they were shown photographs of the rut in evidence, that the rut was a "bad spot" because the rut was "too deep" and "larger than usual."

There was testimony that the rut could have been caused by washouts following heavy rains or by trucks going off the road. Several employees of the State Department of Transportation testified that ruts are a continuing problem in the Waiahole-Waikane area during the winter months because of frequent rains and intermittent heavy rains resulting in floods. There was no evidence of heavy rain in the Waiahole-Waikane area from December 13 through 22, 1973.

I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE STATE BREACHED ITS DUTY TO MAINTAIN THE HIGHWAY, INCLUDING THE SHOULDER THEREOF, IN A REASONABLY SAFE MANNER.

The appellant does not contend that it does not have the duty to maintain the State highway or the shoulders thereof.

The appellant, under HRS § 264-43,[4] is required to maintain all State highways.

We have not construed Section 264-43 in reference to the maintenance of the shoulders of the State highways.

However, in *Terranella v. City & County*, 52 Haw. 490, 479 P.2d 210 (1971), in construing a somewhat similar statute,

---

[4] HRS § 264-43 reads:
Responsibility. The department of transportation shall construct, maintain, and administer all highways comprising the state highway system.

HRS § 265-1,[5] which requires counties to "maintain and repair, all county highways . . .", we stated:

> . . . [T]he present statute contemplates a duty on the part of the proper county authorities to exercise ordinary care to keep safe not only the part of the road or highway customarily used by the traveling public but also the part contiguous to the traveled part, [footnote omitted] and, at least where the defendant had or should have had notice or knowledge of the irregularity in the shoulder, it should be held liable where the shoulder was found to be defective and a menace to users of the highway.

52 Haw. at 494, 479 P.2d at 213.

In footnote 6, of the above quote, this court stated, "However, we do not view this duty as requiring the shoulders to be of the same quality or composition as that of the road or highway but only that the shoulders be maintained in a reasonably safe manner."

We are of the opinion that HRS § 264-43 imposes a duty upon the State not only to exercise ordinary care in maintaining the roadway or highway in a reasonably safe condition but also to keep the shoulders thereof in a reasonably safe condition for the people who exercise ordinary care in traveling over the roadway or highway.

Though the State has the duty to exercise ordinary care to maintain the shoulders of the highway in a reasonably safe condition, the question of whether in the instant case the State breached its duty to so maintain the shoulders depends upon whether the State "had or should have had notice or knowledge of the irregularity [or defect] in the shoulder" of the highway; and, further depends upon whether the State, thereafter, exercised ordinary care in repairing and maintaining the shoulders of the highway in a reasonably safe condition for above mentioned users of the highways.

---

[5] HRS § 265-1 reads in part:

. General supervision. The several councils or other governing bodies of the several political subdivisions of the State shall have the general supervision, charge, and control of, and the duty to maintain and repair, all county highways. . . .

Appellant contends that the trial court erred in finding that:

> . . . At the time of said collision, the top layer of asphalt was worn away immediately adjacent to said rut, leaving the mauka traffic lane less than ten feet in width.

(Finding of Fact No. 6)

Appellant further contends that the evidence does not support the trial court's finding that:

> Defendant knew or should have known of the existence of said rut and said worn pavement prior to said collision and should have repaired same, as said rut and worn pavement constituted a hazard to the public in general and to plaintiff in particular.

(Finding of Fact No. 7)

In contending that the trial court erred in its finding of fact No. 7, the appellant states that "the question of what constitutes reasonably safe maintenance remains an open question in this jurisdiction. The guidance provided by this court in *Terranella* leads to the conclusion that the State should be held liable where the shoulder is found to be 'defective and a menace to users of the highway' ".

The appellant's basic contentions appear to be that it did exercise the necessary ordinary care to maintain the instant shoulder of the highway in a reasonably safe condition for the users of the highway; that it had no notice of the reopening of the rut on said shoulder even upon making regular checks of the highway in question; that since the record does not disclose when the rut actually developed again the State did not breach its duty to maintain the shoulder in a reasonably safe condition.

Though the findings of fact by the trial court fail to resolve clearly the above issue raised by appellant, the record herein is "sufficiently clear that we do not need the aid of additional findings in reviewing the judgment which denies" appellant's claim. *Associated Engineers & Contractors v. State*, 58 Haw. 187, 194, 567 P.2d 397, 404 (1977).

We are of the opinion that the appellant not only failed to maintain the shoulder of the highway in a reasonably safe condition, but did negligently breach its duty to maintain the

shoulder in a reasonably safe condition.[6]

The record, in brief, shows thusly:

(a) the appellant after initially becoming aware of the rut in the shoulder made temporary repairs with coral fill placed in the rut;

(b) the appellant was fully cognizant that the coral fill had to be replaced with a more permanent type of repair;

(c) the appellant was fully aware that the highway where the temporarily filled rut existed was subjected to frequent rains causing the shoulders of the highway to be frequently wet and soggy;

(d) the appellant, through experience, knew that trucks frequently ran off the paved portion of the highway onto the shoulder thereof, causing ruts to occur on said shoulder;

(e) the appellant, however, made no additional repairs, temporary or permanent, of the rut in question, though appellant was aware that the temporary repairs made could not withstand the pressures of rain and of the trucks moving off the highway onto the soft shoulder of the highway;[7]

---

[6] The appellant conceded during its oral argument that it had been negligent.

[7] The foreman testified:

Q. . . . [W]hen you put this coral in this area by September, you knew this was a temporary measure?

A. Yeah.

Q. And you knew when the first flood came along it was all going to wash out, right?

A. Yeah.

Q. If it's a heavy rain, you know this coral all are going to wash out?

A. Oh, yes, you're going to expect that.

Q. But you didn't plan to come back for any more repairs until the dry season?

A. Until the dry season comes back on.

. . . .

THE COURT: And by temporary, you mean that you intended to come back at a later date?

. . . .

THE WITNESS: Three or four months after the rainy season, after the rainy season.

THE COURT: What's the rainy season?

THE WITNESS: It starts in November, October, November, December. Sometimes it happens until January.

(f) the appellant had ample time to make any additional and necessary repairs to the rut so that the shoulder of the highway would be in a reasonably safe condition for said users;

(g) the appellant knew or should have known that since the top layer of asphalt on the highway immediately adjacent to said rut had been worn away, the users of the highway were further endangered because of the likelihood that their cars would drop into the rut on the said shoulder;

(h) the worn portion of the top layer of asphalt on the highway and the rut on the shoulder immediately adjacent to said worn asphalt cannot be said to have been the result of heavy rains falling within three or four days prior to the date of the accident.[8]

In our opinion, if the State, during its regular and frequent checks of the highway and shoulder thereof, had exercised ordinary care to observe the maintenance condition of the highway and the shoulder thereof, the worn part of the top layer of asphalt of the highway and the said rut on the shoulder would have been noticed.

We, therefore, conclude that the findings of fact of the trial court challenged by the appellant are supported by substantial evidence in the record.[9]

II. WHETHER THE TRIAL COURT ERRED IN CONCLUDING THAT THE SOLE PROXIMATE CAUSE OF THE COLLISION WAS THE STATE'S FAILURE TO MAINTAIN THE HIGHWAY, INCLUDING THE SHOULDER THEREOF, IN A REASONABLY SAFE MANNER.

---

[8] As to washouts, the area foreman testified as follows:

A. A wash-out occurs when you do have . . . [a] flash flood, sir, or a heavy rain. . . . It washes out the coral.

Q. Do I understand this to mean the flood would come down and wash out the coral that you may have put in there a day before?

A. That's right.

Q. If it's a heavy rain or flash flood, it will take all the coral off with one swoop at night?

A. Yes, it will.

[9] The standard of review herein is whether the findings of fact of the trial court is "clearly erroneous". Shoemaker v. Takai, 57 Haw. 599, 601, 561 P.2d 1286, 1288 (1977).

Appellant contends that the evidence does not support the trial court's conclusions that:

The sole proximate cause of the collision in which Plaintiff was involved on December 22, 1973, was the failure of Defendant to maintain Kamehameha Highway, including the shoulder thereof, in a reasonably safe manner for the use of the public in general and Plaintiff in particular.

(Conclusion of Law No. 2) and that:

Plaintiff's injuries suffered in the collision on December 22, 1973, the subsequent surgeries, and the future pain and disfigurement Plaintiff will suffer, are all the proximate result of Defendant's failure to maintain Kamehameha Highway, including the shoulder thereof.

(Conclusion of Law No. 3)

Appellant contends further that the trial court's findings that:

Plaintiff . . . drove said automobile in a reasonable and prudent manner from the Hauula area to the scene of the accident. . . .

(Finding of Fact No. 9)

As Plaintiff's automobile approached the Waiahole Bridge, one or both of the tires on the right side of the automobile fell from the edge of said worn pavement into said rut which caused the automobile to jump, causing Plaintiff to lose control of the automobile and to swerve into the makai (oncoming) traffic lane. . . .

(Finding of Fact No. 10) are unsupported by the evidence.

Appellant urges upon this court that appellee was negligent and that this negligence was a contributing cause, if not the sole proximate cause, of the injuries sustained by appellee.[10] Appellant premises its arguments upon the following

_____

[10] This jurisdiction's comparative negligence statute, HRS § 663-31, provides in pertinent part:

(a) Contributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, but any damages

contentions:

1. "Plaintiff was travelling about 50 mph in a 45 mph zone."

2. "Plaintiff failed to keep a proper lookout for the soft shoulder rut that was in plain view ahead of her."

3. "Plaintiff drove her vehicle onto the shoulder . . . long before she hit the rut."

4. "Plaintiff failed to exercise due care when she failed to apply her brakes and bring her car under control when she found herself off the paved surface."

In our opinion, the record does not sustain appellant's contentions. Only in regard to appellant's contention that "Plaintiff was travelling about 50 mph in a 45 mph zone" is there any conflicting evidence. In this instance, the trial court, as the fact finder herein, resolved the conflicting evidence based on the credibility of the witnesses and the weight of the evidence. *Shinn v. Edwin Yee, Ltd.*, 57 Haw. 215, 219, 553 P.2d 733, 737 (1976); *Kam Oi Lee v. Fong Wong*, 57 Haw. 137, 143, 552 P.2d 635, 640 (1976).

We see no merit in appellant's argument that appellee was negligent and that this negligence was a contributing cause, if not the sole proximate cause, of the injuries sustained by appellee.

In our opinion the trial court's findings of fact Nos. 9 and 10 are not clearly erroneous, and are supported by substantial evidence. We are of the further opinion that the trial court's conclusions of law Nos. 2 and 3 are correct.

Affirmed.

*Dan T. Kochi*, Deputy Attorney General (*Nelson S. W. Chang* and *Roy Y. Yempuku*, Deputy Attorneys General, on the briefs) for defendant-appellant.

*Jack C. Morse* for plaintiff-appellee.

---

allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.