MELCHOR V. LAGUA and JEAN G. LAGUA, Plaintiffs-
Appellants, *v.* STATE OF HAWAII, Defendant-Appellee

NO. 7702

(CIVIL NO. 53546)

AUGUST 19, 1982

RICHARDSON, C.J., LUM, NAKAMURA,
PADGETT AND HAYASHI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

This appeal taken by the plaintiffs-appellants, Melchor V. and Jean G. Lagua (Lagua or appellants hereinafter), is from an order issued by First Circuit Court Judge Arthur S. K. Fong on November 5, 1979. In that order, Judge Fong granted a motion for summary judgment in favor of the defendant-appellee, State of Hawaii (State hereinafter), and against the appellants. On this appeal, the appellants argue that the motion for summary judgment was erroneously granted. We agree and reverse.

I.

The following facts can be established from an examination of the record of this appeal. At approximately 1 a.m., April 18, 1976, appellant Melchor Lagua got into his car parked at his working place near the airport to drive to his home in Mililani Town. He drove his car along Kamehameha Highway in the Ewa-bound direction. Approximately fifteen to twenty minutes later, Lagua's car was discovered facing in the Ewa direction against a bridge abutment located on the grass medial strip that separates Kamehameha Highway. The car had struck the bridge abutment and Lagua suffered injuries from the accident.

The scene of the accident is best described as follows: Kamehameha Highway consists basically of six traffic lanes, three for Ewa-bound traffic, three for Honolulu-bound traffic. These lanes are divided by a grass medial strip that is eighteen feet wide. A drainage canal, which runs under the roadway, is at a slight angle across Kamehameha Highway. There are two concrete bridge abutments on the medial strip running parallel to the highway, one bordering the Ewa-bound lanes and the other bordering the Honolulu-bound lanes. These abutments are each forty-one feet long, one foot wide, and are eight feet apart. There is a guardrail on each side of the bridge abutment, one protecting the abutment closer to the Ewa-bound lanes and the other protecting the abutment closer to the Honolulu-bound lanes. Each guardrail consists of galvanized metal, twenty-seven feet long, one foot wide, and are held up by three evenly spaced concrete poles. It is not disputed that the bridge abutments and metal guardrails are owned and maintained by the State of Hawaii.

According to the police report, Lagua's car was travelling in the Ewa-bound lanes when it swerved to the left onto the medial strip and struck the end of the bridge abutment closer to the Honolulu-bound highway lanes. A single tire mark was found on the grass medial strip, leading from the edge of the medial strip to the right rear tire of Lagua's car. The tire mark was straight and one hundred and eight feet long.

As a result of the accident, Melchor Lagua suffered injuries to such an extent that he claims that he does not remember the cir-

cumstances of the accident or even events which occurred on that day.

On January 13, 1978, the appellants filed suit in the First Circuit Court of Hawaii alleging that the State negligently designed, constructed, and maintained the aforementioned bridge abutment and guardrail in such a way as to cause and/or enhance Melchor Lagua's injuries. During the ensuing twenty-one months, discovery between the litigants took place which included the taking of depositions and interrogatories of a number of different people.

On October 5, 1979, the appellee filed a motion for summary judgment, arguing that: (1) the State was under no duty to lengthen the guardrail which fronted the bridge abutment closer to the Ewa-bound lanes of Kamehameha Highway; and (2) that Lagua's falling asleep at the wheel of his car was the sole proximate cause of the accident and attendant injuries. On October 24 and 25, 1979, hearings on the motion were held before the trial judge. On October 25th, the trial judge orally granted appellee's motion for summary judgment. A written order to that effect was issued on November 5, 1979.

A reading of the hearing transcript reveals that the trial judge relied on this court's decision in *Pickering v. State,* 57 Haw. 405, 557 P.2d 125 (1976) in finding that there existed no genuine issue of material fact.

## II.

On appeal, appellants argue that the trial judge erred in ruling that the State owed no duty to Melchor Lagua to design, construct, and maintain the guardrail in a reasonably safe condition. The State answers by acknowledging that the State has a duty to maintain its highways. However, it argues that the duty to keep highways "reasonably safe" is fulfilled "when people who exercise ordinary care can and do travel over it safely." The State further contends it was Melchor Lagua's falling asleep at the wheel of his car which caused the accident.

In *Ikene v. Maruo,* 54 Haw. 548, 550, 511 P.2d 1087 (1973), this court adopted the standard set out in *Boyce Motor Lines v. State,* 280 App. Div. 693, 696, 117 N.Y.S.2d 289, 292 (1952) which provides that: "A highway may be said to be reasonably safe when people who

exercise ordinary care can and do travel over it safely." Later, in *Pickering v. State, supra*, 57 Haw. at 409, 557 P.2d at 128, this court stated: "The duty of the State is to design and construct its highways in such a manner as to make them reasonably safe for their intended uses, and thereafter to maintain them in a reasonably safe condition." The State's duty to maintain includes a duty to correct or inform the public of the existence of highway defects. *Breed v. Shaner*, 57 Haw. 656, 665, 562 P.2d 436, 441 (1977). In addition, in *Anders v. State*, 60 Haw. 382, 387, 590 P.2d 564, 567 (1979), this court determined that under Hawaii Revised Statutes (HRS) § 264-43,[1] the State has a duty "not only to exercise ordinary care in maintaining the roadway or highway in a reasonably safe condition but also to keep the shoulders thereof in a reasonably safe condition." *See also Terranella v. City & County*, 52 Haw. 490, 479 P.2d 210 (1971).

From this line of cases, we find that the State of Hawaii does have a general duty to design, construct, and maintain its highways and shoulders thereof in a reasonably safe manner. Furthermore, in *Pickering v. State, supra*, this court suggested that the State's duty to maintain reasonably safe highways could entail the duty to design and construct guardrails with due care. 57 Haw. at 408-09, 557 P.2d at 127.

The trial judge appears to have recognized that the *Pickering* decision did intimate that the State's duty over its highways could entail guardrails, but ruled that the State is not under a duty to build guardrails that "guarantee that nobody is going through a guardrail." He also stated that: "I don't see any difference right now from *Pickering*, period."

While the trial judge was correct in his statement that under *Pickering*, "[t]he State is not the insurer of the personal safety of every member of the motoring public," 57 Haw. at 409, 557 P.2d at 128, he was incorrect in his statement that this case was no different than *Pickering*.

In *Pickering v. State, supra*, the defendant driver fell asleep at the wheel of the car he was driving along Kalanianaole Highway. The

---

[1] HRS § 264-43 provides: "The department of transportation shall construct, maintain, and administer all highways comprising the state highway system." In this case, however, the appellants have not cited this statutory provision as a basis for the State's duty.

car struck the medial curb, jumped over the medial guardrail, entered the opposite-bound traffic lanes, and struck the plaintiff's car. The State was sued as a co-defendant for negligent design and construction of the medial guardrails. The trial judge granted the State's motion for summary judgment. This court affirmed that ruling, holding that based on the record the conduct of the defendant's falling asleep at the wheel was the sole proximate cause of the accident which claimed the life of the plaintiff.

In *Pickering*, this court was presented with a record which contained no evidence which could lead a trier of fact to possibly conclude that the State negligently designed or constructed the medial guardrails involved in the accident. Furthmore, there was no dispute as to the fact that the defendant driver had fallen asleep at the wheel. Under the state of that record, summary judgment in favor of the State was appropriate.

In this case, however, the record before the trial court did contain evidence from which a trier of fact could possibly find that the State was negligent in its design of the guardrails on Kamehameha Highway. According to Thomas G. Schultz, Ph.D., a highway engineer, good engineering practice in 1960-61 (when the guardrail in question was built) required a 50-foot guardrail instead of the 28.5-foot guardrail involved in this case. Dr. Schultz also suggested that the tapering or offset at the end of the guardrail was improper and the width of the highway shoulder inadequate. Additionally, it was Dr. Schultz's opinion that had the guardrail been of the proper length and construction, Mr. Lagua's car would have struck it with a glancing or deflecting type of blow which would have reduced the extent of the injuries suffered.

The availability of Dr. Schultz's testimony was brought to the attention of the trial judge both in written memorandum and at the summary judgment hearing. Yet, despite the existence of the testimony on the record, the State's summary judgment motion was granted.

## II.

It is well established that summary judgment will be sustained only if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a

matter of law. *Iuli v. Fasi,* 62 Haw. 180, 613 P.2d 653 (1980); and *Lau v. Bautista,* 61 Haw. 144, 598 P.2d 161 (1979). *Pickering v. State, supra.* Furthermore, cases involving issues of negligence are generally best left for the trier of fact. *Pickering v. State, supra.* In this case, the evidence in the record before us shows that there exists a genuine issue of material fact as to whether the guardrail involved in this case was designed with reasonable care.[2]

We wish to make clear that the State is not required to provide for every possible happening on its highways, nor exercise extraordinary care to guard against unusual accidents. *Pickering v. State,* 57 Haw. at 409, 557 P.2d at 128. However, the State is required to exercise reasonable care in designing, constructing, and maintaining reasonably safe highways.

### IV.

For all of the foregoing reasons, we reverse and remand for proceedings consistent with this opinion.

*Christopher P. McKenzie (Benjamin L. Carroll, III,* on the briefs) for appellants.

*Thomas D. Farrell (Leighton Kim Oshima* on the brief), Deputies Attorney General, for appellee.

---

[2] We note that there appears to be an additional genuine issue of material fact about the proximate cause of the accident. The State contends that Melchor Lagua's falling asleep at the wheel of his car was the sole proximate cause of the accident. While the record does appear to contain some opinion evidence for this assertion, the appellants dispute the assertions citing to the fact that there is no direct evidence for this conclusion. Issues of proximate cause as are the other elements of a negligence action are best left for the trier of fact. The existence of this disputed fact relating to proximate cause is an additional reason for not sanctioning the granting of summary judgment in this case.